# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 13-50781
c/w 13-50783

United States Court of Appeals
Fifth Circuit

**FILED**

August 25, 2014

Lyle W. Cayce
Clerk

In the Matter of: LISA ANN GALAZ,

Debtor

----------------------------------------------------

RAUL GALAZ; SEGUNDO SUENOS, L.L.C.,

Appellants

v.

LISA ANN GALAZ; JULIAN JACKSON,

Appellees

Appeals from the United States District Court
for the Western District of Texas

Before HIGGINBOTHAM, JONES, and PRADO, Circuit Judges.

EDITH H. JONES, Circuit Judge:

Appellants Raul Galaz and Segundo Suenos, L.L.C.[1] appeal two judgments entered by the district court, acting in its appellate capacity, that affirmed the entry of final judgment and award of damages by a bankruptcy court for debtor Lisa Ann Galaz and third-party Julian Jackson. Because

---

[1] Although not apparent from the record, "Segundo Suenos" was most likely formed with the intention of reading "Segundo Sueños," which is Spanish for "Second Dreams." This opinion will use the spelling used by the entity itself.

No. 13-50781
Cons. w/ No. 13-50783

rapidly evolving case law has limited bankruptcy courts' jurisdiction, we must vacate and remand with separate instructions for each judgment creditor.

## BACKGROUND

Lisa filed an adversary proceeding in bankruptcy court against her ex-husband, Raul, for fraudulently transferring the assets of Artist Rights Foundation, LLC ("ARF") to a Texas limited liability company managed by Raul's father. Raul, a former California attorney,[2] founded ARF in 1998 as a California limited liability company with Julian, a music producer, in order to collect royalties for the music of the Ohio Players, a former funk band. Raul and Julian secured all rights to the Ohio Players' music catalogue and exploited those rights, but from 1998 until 2005 the rights did not generate any revenue. In May 2002, Lisa and Raul divorced and executed a divorce decree under which Raul assigned half of his 50% interest in ARF to Lisa. Because Raul transferred half of his interest to Lisa without Julian's consent, in violation of ARF's written operating agreement ("Operating Agreement"), Lisa received a 25% economic interest in ARF with no management or voting rights.

On June 3, 2005, without obtaining prior consent from either Lisa or Julian, Raul assigned all of ARF's rights to the entity Segundo Suenos. At the time of the transfer, Segundo Suenos was not organized as a business entity under the laws of any state. Three months later, Raul assisted his father, Alfredo Galaz, in filing the necessary documents to establish Segundo Suenos, L.L.C. ("Segundo Suenos") within the state of Texas. Shortly thereafter, the royalties for the Ohio Players' music began to generate a substantial amount of revenue. From the time of ARF's transfer in June 2005 until trial in February 2010, Segundo Suenos's gross revenue from the Ohio Players'

---

[2] Raul resigned from the California bar in 2002 after pleading guilty to mail fraud.

No. 13-50781
Cons. w/ No. 13-50783

royalties totaled nearly one million dollars.  Neither Julian nor Lisa received any share of the profits despite their interests in ARF.

In 2007, Lisa filed for Chapter 13 bankruptcy.  In April 2008 she brought an adversary proceeding against Raul, Alfredo, and Segundo Suenos ("Defendants"), asserting claims under 11 U.S.C. §§ 542, 544, 548 and the Texas Uniform Fraudulent Transfer Act ("TUFTA"), and asserted that Raul, as a managing member of ARF, breached his fiduciary duties to Lisa when he transferred ARF's assets to Segundo Suenos.  Defendants filed a third-party complaint against Julian, who in turn asserted seven counterclaims against Defendants, including breach of fiduciary duty and fraudulent conversion.[3] After a five-day bench trial, the bankruptcy court found that the transfer of assets from ARF to Segundo Suenos was invalid, that it constituted a fraudulent transfer under TUFTA, that Raul owed fiduciary duties to Julian and had breached those duties, and that Raul owed no fiduciary duties to Lisa. The court entered judgment for Lisa and Julian, awarding Lisa $250,000 in actual damages and $250,000 in exemplary damages, and awarding Julian $500,000 in actual damages and $500,000 in exemplary damages.  Raul and Segundo Suenos appealed the judgment to the district court, which affirmed the bankruptcy court's judgment but vacated and remanded the damages awards for further consideration of Segundo Suenos's alleged expenses and for redetermination of both the actual and exemplary damages.  On remand, after deducting tax liabilities that ARF incurred from 1998 to 2005, the bankruptcy

---

[3] Julian asserted the following counterclaims: Breach of fiduciary duty, fraudulent conversion, unfair business practices, currency in possession and received, unjust enrichment, non-disclosure of accounting, and perjury.  Counterclaim Against Alfredo Galaz, Raul Galaz, Segundo Suenos, LLC, *In re Lisa Ann Galaz*, No. 08-05043 (Bankr. W.D. Tex. November 23, 2009).

No. 13-50781
Cons. w/ No. 13-50783

court awarded Lisa $241,309.10 in actual damages and $250,000 in exemplary damages, and awarded Julian $479,216.95 in actual damages and $500,000 in exemplary damages. Appellants appealed the judgment, and the district court affirmed.[4] This timely appeal from the district court followed.[5]

## STANDARD OF REVIEW

When reviewing a district court's affirmance of a bankruptcy court's judgment, this court applies "the same standard of review to the bankruptcy court decision that the district court applied." *In re Frazin*, 732 F.3d 313, 317 (5th Cir. 2013) (quoting *In re IFS Fin. Corp.*, 669 F.3d 255, 260 (5th Cir. 2012) (internal quotation marks omitted)), *cert. denied*, 134 S. Ct. 1770 (U.S. 2014). Thus, this court reviews factual findings for clear error and legal conclusions *de novo. Id. See also In re OCA, Inc.*, 551 F.3d 359, 366 (5th Cir. 2008).

## DISCUSSION

### A. Subject Matter Jurisdiction

The principal issues in this appeal concern the bankruptcy court's jurisdiction to entertain Lisa's and Julian's claims and the district court's role in reviewing the bankruptcy court's determinations. Appellants contend that Lisa's claims and Julian's counterclaims did not seek recovery of property taken from Lisa's estate and will not have any effect on her bankruptcy case. This court reviews the question of subject matter jurisdiction *de novo. In re OCA, Inc.*, 551 F.3d at 366. As will be seen, the case turns on two separate questions, the statutory and constitutional authority of the bankruptcy court. We consider each in turn.

---

[4] Alfredo Galaz was not held liable.

[5] Despite being named as an appellee in this case, Julian did not participate in the proceedings before this court or the district court, even after the district court ordered Julian to file a brief during Appellants' appeal of the damages award.

4

No. 13-50781
Cons. w/ No. 13-50783

In *Matter of Walker*, this court explained the source of a bankruptcy court's jurisdiction:

> Jurisdiction for bankruptcy cases is rooted in the provisions of 18 U.S.C. § 1334. . . . Section 1334 provides that, with one exception, "the district court shall have original and exclusive jurisdiction of all cases under title 11." . . . Through this section, district courts, along with their bankruptcy units, are empowered to hear "cases under title 11" [i.e. the bankruptcy petition itself]. [Additionally,] § 1334(b) gives the district courts original, but not exclusive, jurisdiction over "proceedings arising under title 11"; "proceedings 'arising in' a case under title 11"; and "proceedings 'related to' a case under title 11."

51 F.3d 562, 568 (5th Cir. 1995) (internal citations omitted). Relevant to the analysis here are those cases that are at least "related to" a bankruptcy case.

> Although the Bankruptcy Code does not define "related matters," . . . we determined that a matter is related for § 1334 purposes when "'the outcome of that proceeding could *conceivably* have any effect on the estate being administered in bankruptcy.'" As we later more specifically stated, "'[a]n action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate.'" Conversely, "bankruptcy courts have no jurisdiction over proceedings that have no effect on the debtor."

*Id.* at 569 (internal citations omitted) (emphasis in original).

As the district court found, a judgment against Appellants could, at least conceivably, increase the size of Lisa's bankruptcy estate. *See In re BP RE, L.P.*, 735 F.3d 279, 282 (5th Cir. 2013) (state law claims brought by debtor against third-party non-creditors were "related to" the bankruptcy case); *Waldman v. Stone*, 698 F.3d 910, 916 (6th Cir. 2012), (bankruptcy court had subject matter jurisdiction over a debtor's state law claims in an adversary

No. 13-50781
Cons. w/ No. 13-50783

proceeding, in part because "a damages award on [the debtor's] affirmative claims would provide assets for his other creditors"). Lisa's TUFTA claim, it must be noted, is not the paradigmatic fraudulent conveyance claim in bankruptcy, which "asserts that property that should have been part of the bankruptcy estate and therefore available for distribution to creditors pursuant to Title "was improperly removed." *Executive Benefits Ins. Agency v. Arkison*, 134 S. Ct. 2165, 2174, 189 L. Ed. 2d 83, 82 U.S.L.W. 4450 (2014). In typical bankruptcy fraudulent conveyance cases, it is the debtor who "removes" property from his estate to prevent its falling into the hands of creditors. Here, Lisa is a victim—in her status as an economic interest holder and therefore a creditor—of Raul's unauthorized transfer of ARF's assets. Her state law claim for damages and other relief is against parties who are otherwise uninvolved in the bankruptcy case and exists irrespective of the pendency of the bankruptcy case.[6]

Julian's counterclaims, in contrast, will not result in any recovery for Lisa, nor will they have any effect on her bankruptcy case. Even in light of the permissive standard for what constitutes matters "related to" bankruptcy, Julian's counterclaims as a third-party defendant fall short. *See Matter of Walker*, 51 F.3d at 569 ("As several courts have observed, 'a vast majority of cases find that "related to" jurisdiction is lacking in connection with third-party complaints.'"). Because the bankruptcy court lacked subject matter jurisdiction over Julian's unrelated third-party counterclaims, we must vacate the judgments for Julian.

---

[6] As thus characterized, Lisa's claim could not arise under the Bankruptcy Code itself, 11 U.S.C. § 548, and is not a "core" claim.

No. 13-50781
Cons. w/ No. 13-50783

Appellants also challenge the bankruptcy court's constitutional power to enter final judgment on Lisa's claims. A bankruptcy court may enter final judgment only if the court has both statutory and constitutional authority to do so. *Stern v. Marshall*, 131 S. Ct. 2594, 2608, 180 L. Ed. 2d 475, 79 U.S.L.W. 4564 (2011). A bankruptcy court's statutory authority derives from 28 U.S.C. §157(b)(1), which designates certain matters as "core proceedings" and authorizes a bankruptcy court to determine the matters and enter final judgments. *See Executive Benefits*, 134 S. Ct. at 2171. *See also Waldman*, 698 F.3d at 921-22 ("A core proceeding either invokes a substantive right created by federal bankruptcy law or one which could not exist outside of the bankruptcy." (quoting *Lowenbraun v. Canary*, 453 F.3d 314, 320 (6th Cir. 2006))), *cert denied*, 133 S. Ct. 1604 (2013). As for "non-core" proceedings, 28 U.S.C. § 157(c) authorizes a bankruptcy court either to "submit proposed findings of fact and conclusions of law to the district court," which are reviewed *de novo*, or to enter final judgment with the parties' consent. *Executive Benefits*, 134 S. Ct. at 2172.

While Section 157 gives bankruptcy courts statutory authority to enter final judgment on specific bankruptcy-related claims, "Article III of the Constitution prohibits bankruptcy courts from finally adjudicating certain of those claims." *Id.* at 2168. "Congress may not bypass Article III simply because a proceeding may have *some* bearing on a bankruptcy case; the question is whether the action at issue stems from the bankruptcy itself or would necessarily be resolved in the claims allowance process." *Stern*, 131 S. Ct. at 2618. Thus, "when a debtor pleads an action arising only under state-law, . . . or when the debtor pleads an action that would augment the bankrupt estate, but not 'necessarily be resolved in the claims allowance process[,]' then the bankruptcy court is constitutionally prohibited from

7

No. 13-50781
Cons. w/ No. 13-50783

entering final judgment." *Waldman*, 698 F.3d at 919 (quoting *Sterns*, 131 S. Ct. at 2618). *Accord In re BP RE*, 735 F.3d at 285.

The district court treated Lisa's TUFTA claim as being "related to" the bankruptcy rather than a core bankruptcy claim. We agree with this characterization. The court went on, however, to hold that the bankruptcy court had authority to enter a final judgment based on the Appellants' implied consent. 28 U.S.C. § 157(c)(2); Bankr. Rule 7012; Memo Op., *Galaz v. Galaz*, No. 11-00425 (W.D. Tex April 17, 2012). This court's later decisions in *In re Frazin* and *In re BP RE* are at odds with the district court's consent rationale. Each of these cases holds that according to *Stern*, the parties' express or implied consent cannot cure the constitutional deficiency that results from circumventing, or diminishing, the Article III structural protections for the federal judiciary. *In re BP RE*, 735 F.3d at 286-87 (relying on *Waldman*, 698 F.3d at 917, 918); *In re Frazin*, 732 F.3d at 319. While the Supreme Court reserved in *Executive Benefits* the issue of the efficacy of consent to support certain final bankruptcy court judgments, *see* 134 S. Ct. at 2170 n.4, the Court has granted certiorari on a case raising that issue. *Wellness Int'l Network Ltd. v. Sharif*, 727 F.3d 751 (7th Cir. 2013), *cert. granted in part*, 134 S. Ct. 2901, 82 U.S.L.W. 3496 (2014). Until the Supreme Court decides, we are bound by controlling circuit precedent.

The failure of the consent rationale does not vitiate the lower courts' work altogether, however. As the Supreme Court recently held, claims designated for final adjudication in the bankruptcy court as a statutory matter, but prohibited from proceeding in that way as a constitutional matter, may still "proceed as non-core within the meaning of § 157(c)." *Executive Benefits*, 134 S. Ct. at 2173. Because Lisa's claim is "related to a case under title 11," 28 U.S.C. § 157(c)(1), the bankruptcy court may still hear it and "submit

proposed findings of fact and conclusions of law to the district court for *de novo* review and entry of judgment." *Executive Benefits*, 134 S. Ct. at 2173. *Id.* at 2174 (holding that the debtor's fraudulent conveyance claims "fit comfortably within the category of claims governed by § 157(c)(1)" and that the bankruptcy court would have been permitted to submit proposed findings of fact and conclusions of law on such claims). Accordingly, the district court's judgment on Lisa's TUFTA claim must be vacated and remanded for *de novo* review of the bankruptcy court's decision as recommended findings and conclusions.

## B. Arbitration

Appellants contend alternatively that the bankruptcy court should have referred Lisa's claims to arbitration pursuant to an arbitration provision in the ARF Operating Agreement. "[O]nly parties to an arbitration agreement are generally bound by it," *In re Huffman*, 486 B.R. 343, 354 (Bankr. S.D. Miss. 2013). As the bankruptcy court found, Lisa was not a party to the Operating Agreement. The Operating Agreement's opening paragraph refers to "parties" as the LLC's "Members." Lisa held an only economic interest. While this circuit has recognized a limited set of circumstances in which a nonsignatory may be bound to an arbitration agreement,[7] there is no argument or evidence suggesting how Lisa, neither a Member nor a party to the LLC, is bound to the arbitration provision. As to Lisa, this argument is meritless.

## C. TUFTA Claim

Appellants challenge the district court's affirmance of the bankruptcy court's judgment finding liability on Lisa's TUFTA claim. *See* Bankr. Ct. Op.,

---

[7] "Six theories for binding a nonsignatory to an arbitration agreement have been recognized: (a) incorporation by reference; (b) assumption; (c) agency; (d) veil-piercing/alter ego; (e) estoppel; and (f) third-party beneficiary." *Bridas S.A.P.I.C. v. Gov't of Turkmenistan*, 345 F.3d 347, 355-56 (5th Cir. 2003).

No. 13-50781
Cons. w/ No. 13-50783

*In re Lisa Ann Galaz*, No. 08-05043 (Bankr. W.D. Tex. Nov. 12, 2010). Although the district court will ultimately review this claim *de novo* upon remand, we clarify one legal point as guidance.

TUFTA "aims to prevent debtors from fraudulently placing assets beyond the reach of creditors." *GE Capital Commercial Inc. v. Worthington Nat'l Bank*, 754 F.3d 297, 302 (5th Cir. 2014). In order to prevail on a TUFTA claim, a plaintiff must prove that (1) she is a "creditor" with a claim against a "debtor"; (2) the debtor transferred assets after, or a short time before, the plaintiff's claim arose; and (3) the debtor made the transfer with the intent to hinder, delay, or defraud the plaintiff. *Nwokedi v. Unlimited Restoration Specialists, Inc.*, 428 S.W.3d 191, 204-05 (Tex. App.—Houston [1st Dist.] 2014, pet. denied) (citing Tex. Bus. & Com. Code § 24.005(a)(1)). One issue raised here is whether Lisa qualifies as a "creditor" within the meaning of TUFTA. TUFTA defines a creditor as someone who has a "claim"—that is, a "right to payment or property, whether or not the right is reduced to judgment, liquidated, . . . fixed, contingent, matured . . . disputed, undisputed, legal, equitable, [or] secured," Tex. Bus. & Com. Code §§ 24.002(3), (4)—and defines "debtor" as "a person who is liable on a claim," *id*. at § 4.002(6).

The bankruptcy court assumed Lisa qualified as a "creditor" under TUFTA, but the district court held that Lisa had standing to assert a TUFTA claim as a creditor because she brought her claim in conjunction with other unliquidated, disputed tort claims that arose at the time ARF's assets were transferred. While we agree that Lisa qualifies as a creditor, it is more precise to say her status as a creditor turns on whether "she had a right to payment or property that existed at the time of the fraudulent transfer[] or that arose within a reasonable time afterwards." *Williams v. Performance Diesel, Inc.*, No. 14-00-00063-CV, 2002 WL 596414 at *2 (Tex. App.—Houston [14th Dist.]

10

No. 13-50781
Cons. w/ No. 13-50783

Apr. 18, 2002, no pet.) (citing Tex. Bus. & Com. Code §§ 24.005(a), 24.006). Because she was an economic interest holder of ARF, which was a creature of California corporate law, she had a right to payment and was entitled to distributions from ARF before it was "dissolved" in December 2006 and Raul transferred the royalty rights.    *See* Cal. Corp. Code § 17001(n) ("'Economic interest' means a person's right to share in the income, gains, losses, deductions, credit, or similar items of, and to receive distributions from, the limited liability company[.]"); *id.* at § 17300 ("[A]n economic interest in a limited liability company constitute[s] personal property of the . . . assignee.").[8] Lisa thus had standing to bring such a TUFTA claim against Appellants.[9]

Appellants raise additional arguments challenging the bankruptcy court's findings on liability, actual damages and punitive damages, but review of these factual issues is not properly before us.

## Conclusion

Based on the current state of bankruptcy court jurisdiction, as interpreted by the Supreme Court and this court, we must VACATE and REMAND with instructions to DISMISS the judgment in favor of Julian Jackson, which the bankruptcy court adjudicated without jurisdiction.    The

---

[8] Title 2.5 of the California Corporations Code, which includes all provisions applying to limited liability companies, was recently repealed, operative January 1, 2014.  However, because the relevant events of this case occurred prior to the repeal, Title 2.5 of the Code applies here.

[9] Raul contends that "an economic interest holder may not bring a suit for fraudulent conveyance under California law," and relies on *PacLink Communications International v. Superior Court*, 90 Cal. App. 4th 958, 964 (Cal. App. 2d Dist. 2001), for this conclusion. However, *PacLink* does not support Raul's contention.  *PacLink* focuses on the rights, or lack thereof, of shareholders to file individual suits and on the diminution of members' ownership interests in company assets.  Lisa was neither a member nor a shareholder of ARF.  She was an economic interest holder.  Noticeably absent from *PacLink* is any discussion about the rights of economic interest holders.

11

bankruptcy court's judgment for Lisa Galaz must also be VACATED and REMANDED to the district court for further proceedings. *In re BP Re*, 735 F.3d at 281. The district court, in turn, may refer the case to the bankruptcy court, which may recast its judgment as proposed findings and conclusions, or may otherwise dispose of the case consistent with this opinion.

Judgment VACATED and REMANDED with instructions to DISMISS IN PART; VACATED and REMANDED for further proceedings IN PART.