IN RE: BROWN MEDICAL
CENTER, INC., Debtor.

Elizabeth M. Guffy, Plan
Agent, Plaintiff

v.

Marshall Davis Brown, Jr., Pavlas, Brown & York, L.L.P., Pavlas & Brown, L.L.P., Jedediah D. Moffet, Jedediah D. Moffet, P.C., Robert S. Hoffman, Law Office of Robert S. Hoffman, P.L.L.C., Joseph Indelicato, Jr., Law Office of Joseph Indelicato, Jr., P.C., Claudia Canales, Law Office of Claudia Canales, P.C., Defendants.

Case No. 13–36405
Adversary No. 15–3229

United States Bankruptcy Court,
S.D. Texas, Houston Division.

Signed January 7, 2016

Stephanie Lindsay Holcombe, Aaron James Power, Amy Kathleen Wolfshohl, Joshua W. Wolfshohl, Porter Hedges LLP, Houston, TX, for Plaintiff.

Jedediah D. Moffet, pro se.

Law Office of Robert S. Hoffman, P.L.L.C., pro se.

Preston T. Towber, The Towber Law Firm, June A. Mann, Mann Law Firm PLLC, Bellaire, TX, Tom Alan Cunningham, Cunningham Darlow, Heather R. Potts, Ostrom Morris, Houston, TX, for Defendants.

## REPORT AND RECOMMENDATION TO THE UNITED STATES DISTRICT COURT RECOMMENDING: (1) THE WITHDRAWAL OF THE REFERENCE OF THIS ADVERSARY PROCEEDING; AND (2) THE REFERRAL BACK TO THIS BANKRUPTCY COURT FOR HANDLING PRETRIAL MATTERS

Jeff Bohm, United States Bankruptcy Judge

### I. INTRODUCTION

In the above-referenced adversary proceeding (the "Adversary Proceeding"). the plaintiff, Elizabeth M. Guffy, who is the

plan agent (the "Plan Agent") under the confirmed Chapter 11 plan of liquidation in the main case, has asserted claims against the following defendants: (1) Marshall Davis Brown, Jr.; (2) Pavlas Brown & York, L.L.P.; (3) Pavlas & Brown, L.L.P.; (4) Jedediah D. Moffet; (5) Jedediah D. Moffett, P.C.; (6) Robert S. Hoffman; (7) the Law Office of Robert S. Hoffman, P.L.L.C.; (8) Joseph Indelicato, Jr.; (9) the Law Office of Joseph Indelicato, Jr., P.C.; (10) Claudia Canales; and (11) the Law Office of Claudia Canales, P.C. (collectively, the "Defendants"). Specifically, the Plan Agent seeks to avoid certain payments in the total amount of at least $6.4 million made by Brown Medical Center, Inc. ("BMC") to or for the benefit of the Defendants.[1] The Plan Agent brings this claim pursuant to 11 U.S.C. §§ 548 and 550(a).[2] Further, the Plan Agent, invoking § 544, seeks money damages against the Defendants pursuant to sections 24.005 and 24.006 of the Texas Business and Commercial Code ("Tex. Bus. & Com. Code").[3] The Defendants have demanded a jury trial, [Adv. Doc. Nos. 38, 44, 46 & 50], and have moved to withdraw the reference of the Adversary Proceeding, [Adv. Doc. Nos. 39, 43, 47 & 51].

The Plan Agent, in the first instance, opposes withdrawal of the reference; alternatively, if the reference is withdrawn, the Plan Agent requests that the District Court immediately refer the Adversary Proceeding to the undersigned judge for adjudication of all pretrial matters. The Defendants oppose the Plan Agent's alternative request that the undersigned judge adjudicate all pretrial motions. For the reasons set forth below, this Court recommends that the reference be immediately withdrawn, but that the District Court then refer the Adversary Proceeding to the undersigned judge for adjudication of all pretrial matters, with the undersigned judge thereafter notifying the District Court when the dispute is ready to be tried.

## II. FACTUAL BACKGROUND OF DR. MICHAEL BROWN AND HIS COMPANY, BROWN MEDICAL CENTER, INC.

The late Dr. Michael Brown ("Dr. Brown") was a noted hand surgeon who practiced in Houston for several years. Over his career, he formed several corporations for the many hand surgical centers he established in other locations outside of Houston, including locations in other states. One of the companies that Dr. Brown established, and over which he had virtually complete control, was BMC.

The undersigned judge has presided over both Dr. Brown's individual bankruptcy case as well as BMC's bankruptcy case. From the many hearings that this Court has held in both Dr. Brown's individual case and BMC's corporate case, this Court has observed a substantially intertwined relationship between these two cases, particularly because Dr. Brown treated BMC's operating account—to use the Plan Agent's phrase—"as a personal piggybank." [Hr'g Tr. 29:5–6, Dec. 16, 2015]. Indeed, sometimes the converse was true, where Dr. Brown used his personal funds to pay the debts of BMC. Because of these circumstances, there have been overlapping claims in these two cases, which

---

1. The figure of $6.4 million is derived through a review of the Plan Agent's amended complaint. [Adv. Doc. No. 18].

2. Any reference to "the Code" refers to the United States Bankruptcy Code, and reference to any section (i.e., § ) refers to a section

in 11 U.S.C., which is the United States Bankruptcy Code, unless otherwise noted.

3. Sections 24.005 and 24.006, as set forth in the Tex. Bus. & Com. Code, may also be referred to as claims under the Texas Uniform Fraudulent Transfer Act (TUFTA).

has necessarily caused the Plan Agent in BMC's Chapter 11 case and the trustee in Dr. Brown's Chapter 7 case to spend time analyzing these claims to fulfill their fiduciary duties.

### III. FACTUAL AND PROCEDURAL BACKGROUND OF THE ADVERSARY PROCEEDING AT BAR

1. On September 18, 2015, the Plan Agent filed her original complaint against the Defendants, thereby initiating the Adversary Proceeding. [Adv. Doc. No. 1]. In her original complaint, the Plan Agent asserted fraudulent transfer claims based on 11 U.S.C. §§ 548 and 550(a), [*Id.* at ¶ 39–42], and Tex. Bus. & Com. Code §§ 24.005, 24.006 (the "TUFTA claims"). [*Id.* at ¶ 44–46].

2. On September 23, 2015, this Court issued its Comprehensive Scheduling, Pretrial, and Trial Order (the "Scheduling Order"). [Adv. Doc. No. 4].

3. On October 6, 2015, the Plan Agent filed her amended complaint against the Defendants (the "Amended Complaint"). [Adv. Doc. No. 18].

4. On October 26, 2015, Defendants Robert S. Hoffman, the Law Office of Robert S. Hoffman, P.L.L.C., Jedediah D. Moffett, and Jedediah D. Moffett P.L.L.C. filed their Motion to Dismiss Plan Agent's First Amended Complaint. [Adv. Doc. No. 37].

5. On November 3, 2015, Defendants Robert S. Hoffman, the Law Office of Robert S. Hoffman, P.L.L.C., Jedediah D. Moffett, and Jedediah D. Moffett P.L.L.C. filed their Demand for Jury Trial, [Adv. Doc. No. 38], and their Motion to Withdraw the Reference, [Adv. Doc. No. 39].

6. Additionally, on November 3, 2015, Defendants Marshall Davis Brown, Jr., Pavlas Brown & York L.L.P., and Pavlas & Brown L.L.P. filed their Motion to Dismiss Plan Agent's First Amended Complaint Pursuant to Fed. R. Civ. P. 12(B)(6) Incorporated by Fed. R. Bankr. P. 7012, [Adv. Doc. No. 42], their Motion to Withdraw the Reference, [Adv. Doc. No. 43], and their Demand for Jury Demand, [Adv. Doc. No. 44].

7. On November 4, 2015, this Court held an initial status conference at which the attorney for the Plan Agent and attorneys for Defendants Marshall Davis Brown, Jr., Pavlas Brown & York, L.L.P., Pavlas & Brown, L.L.P., Jedediah D. Moffet, Jedediah D. Moffett, P.C., Robert S. Hoffman, Law Office of Robert S. Hoffman, P.L.L.C., Joseph Indelicato, Jr., and the Law Office of Joseph Indelicato, Jr., P.C. appeared. Neither Defendants Claudia Canales and Claudia Canales, P.C. nor counsel for these two defendants appeared at this hearing. Based upon the discussion held on the record at this hearing, during which the Court learned that most, if not all of the Defendants, would soon be Filing motions to withdraw the reference, this Court decided to: (a) abate the Scheduling Order; (b) impose deadlines for filing the motions to withdraw reference; (c) impose a deadline on the Plan Agent for filing responses to these motions; and (d) schedule a hearing on December 16, 2015 for all motions to withdraw the reference.

8. On November 6, 2015, Defendants Joseph Indelicato, Jr. and the Law

Office of Joseph Indelicato, Jr., P.C. filed their Motion to Dismiss Plan Agent's First Amended Complaint, [Adv. Doc. No. 45], their Demand for Jury Trial, [Adv. Doc. No. 46], and their Motion to Withdraw the Bankruptcy Reference, [Adv. Doc. No. 47].

9. On the same day, Defendants Claudia Canales and Claudia Canales, P.C. filed their Motion to Dismiss, [Adv. Doc. No. 49], their Jury Demand, [Adv. Doc. No. 50], and their Motion to Withdraw the Reference, [Adv. Doc. No. 51].

10. On November 12, 2015, this Court, knowing that it would be holding a hearing on the multiple motions to withdraw reference, entered an order abating the Scheduling Order. [Adv. Doc. No. 53].

11. On November 16, 2015, the Plan Agent filed her Response to Hoffman and Moffett's Motion to Dismiss First Amended Complaint. [Adv. Doc. No. 55].

12. On November 20, 2015, the Plan Agent filed her Response to Marshall Davis Brown, Jr., Pavlas, Brown & York, LLP and Pavlas & Brown, LLP's Motion to Dismiss. [Adv. Doc. No. 56].

13. On November 24, 2015, the Plan Agent filed her First Amended Response to Hoffman and Moffett's Motion to Dismiss First Amended Complaint. [Adv. Doc. No. 58].

14. On December 4, 2015, the Plan Agent filed her Response to Indelicato's Motion to Dismiss First Amended Complaint, [Adv. Doc. No. 63], and her Response to Canales' Motion to Dismiss First Amended Complaint, [Adv. Doc. No. 64].

15. On December 11, 2015, the Plan Agent filed her Response to Motions to Withdraw the Reference and requested that this Court recommend denial of the Defendants' motions to withdraw. [Adv. Doc. No. 67]. On the same day, Defendants Joseph Indelicato, Jr. and the Law Offices of Joseph Indelicato, Jr., P.C. filed their reply to the Plan Agent's Response to Motion to Dismiss. [Adv. Doc. No. 69].

16. On December 14, 2015, Defendants Robert S. Hoffman, the Law Office of Robert S. Hoffman, P.L.L.C., Jedediah D. Moffett, and Jedediah D. Moffett P.L.L.C. filed their Answer to the Plan Agent's First Amended Complaint. [Adv. Doc. No. 75]. The next day, they filed a reply in support of their motion to withdraw the reference. [Adv. Doc. No. 79].

17. On December 16, 2015, the Court held a hearing solely on the four pending motions to withdraw the reference and the Plan Agent's responses in opposition thereto (the "Hearing"). [See Adv. Doc. Nos. 39, 43, 47, 51 & 67]. At the Hearing, the Plan Agent gave testimony in support of her opposition to the motions to withdraw reference; none of the parties requesting withdrawal of the reference called any witnesses in support of their respective motions. The Court then heard closing arguments from all counsel, and took the matter under advisement. The Court now makes this report and recommendation to the District Court.

## IV. CONCLUSIONS OF LAW

### A. Jurisdiction, Venue, and Constitutional Authority to Enter a Final Order

The Court has jurisdiction over this Adversary Proceeding pursuant to 28 U.S.C.

§§ 1334(b) and 157(a). Section 1334(b) provides that "the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11 [the Code], or arising in or related to cases under title 11." District courts may, in turn, refer these proceedings to the bankruptcy judges for that district. 28 U.S.C. § 157(a). In the Southern District of Texas, General Order 2012–6 (entitled General Order of Reference) automatically refers all eligible cases and proceedings to the bankruptcy courts.

Venue is proper pursuant to 28 U.S.C. § 1409(a).

The Supreme Court's decision in *Stern v. Marshall*, 564 U.S. 462, 131 S.Ct. 2594, 180 L.Ed.2d 475 (2011), recognized certain limitations on a bankruptcy court's authority to enter a final order. Here, however, there is no *Stern* concern because the undersigned judge is not entering a final order on the six pending motions to withdraw reference, but rather is only making a report and recommendation to the District Court to enter an order withdrawing the reference of the Adversary Proceeding and then referring all pretrial matters back to the undersigned judge.

### B. Legal Standard for Withdrawal of the Reference to Bankruptcy Court

■ The District Court has discretion to "withdraw, in whole or in part, any case or proceeding ... for cause shown." 28 U.S.C. § 157(d). In *Holland America Insurance Company v. Roy*, 777 F.2d 992 (5th Cir. 1985), the Fifth Circuit held that in determining whether a movant has shown cause under 28 U.S.C. § 157(d) to withdraw the reference, a district court should consider the following issues: (1) whether the underlying lawsuit is a core or non-core proceeding; (2) whether promotion of uniformity in bankruptcy ad-

ministration will be achieved; (3) whether forum shopping and confusion will be reduced; (4) whether there will be economical use of debtors' and creditors' resources; (5) whether the withdrawal of reference will expedite the bankruptcy process; and (6) whether a party has demanded a jury trial. *Id.* at 999; *see also Mirant Corp. v. Southern Co.*, 337 B.R. 107, 115 (N.D. Tex. 2006) (considering *Holland America* factors in determination of motion to withdraw reference).

### C. This Court Recommends that the District Court Withdraw the Reference and then Refer all Pretrial Matters to the Undersigned Judge Until the Dispute is Ready to be Tried

■ A review of the six *Holland America* factors weighs, on balance, in favor of withdrawal of the reference by the District Court. For the reasons set forth below, this Court recommends that the District Court withdraw the reference of the Adversary Proceeding, but then refer all pretrial matters to the undersigned judge.

#### 1. Whether the Underlying Lawsuit is a Core or Non–Core Proceeding

■ The Plan Agent has brought causes of action against the Defendants under §§ 548 and 550 to avoid and recover alleged fraudulent transfers. There is no question that claims based on these two provisions are statutorily defined core proceedings. 28 U.S.C. § 157(b)(2)(H); *see Johnson v. Williamson (In re British Am. Props. III, Ltd.)*, 369 B.R. 322, 326–27 (Bankr. S.D. Tex. 2007). Invoking § 544 of the Code, the Plan Agent also asserts state law claims for fraudulent transfers under sections 24.005 and 24.006 of the Tex. Bus. & Com. Code. Section 544—commonly referred to as the "strong arm statute"—authorizes a trustee to " 'avoid any trans-

fer of an interest of the debtor in property ... that is voidable under applicable law by a creditor holding an [allowable] unsecured claim.'" *In re IFS Fin. Corp.*, 669 F.3d 255, 261 (5th Cir. 2012) (quoting 11 U.S.C. § 544(b)(1)). Stated differently, § 544 "allows a trustee in bankruptcy to step into the shoes of a creditor holding an unsecured claim and void transfers that are voidable under applicable state law." *In re Cyrus II P'ship*, 413 B.R. 609, 619 (Bankr. S.D. Tex. 2008). However, whether such claims constitute core claims or non-core claims is less clear, as evidenced by the fact that a "non-core proceeding" is not defined by statute and by the split among courts.

Many courts have concluded that while a claim may be rooted in state law (i.e., TUFTA claims), such claim becomes a federal claim under § 544 upon the commencement of a bankruptcy case, thereby invoking a substantive right under title 11 and constituting a core claim. *See, e.g., In re Appalachian Fuels, LLC*, 472 B.R. 731, 739 (E.D. Ky. 2012) ("[R]egardless of whether the fraudulent transfer claims are brought under § 548 or § 544, they are considered core claims."); *In re Ramirez*, 413 B.R. 621, 628 (Bankr. S.D. Tex. 2009) ("The TUFTA claim is an action to avoid the alleged fraudulent transfers, which is part of the illustrative list of core proceedings under § 157(b)(2) ... [t]herefore, the TUFTA claim is core."); *In re Bliss Technologies, Inc.*, 307 B.R. 598, 600 (Bankr. E.D. Mich. 2004) (concluding that the plaintiff's cause of action based upon fraudulent transfer under state law and § 544(b)(1) is a core proceeding); *In re Ernie Haire Ford, Inc.*, 2012 WL 4356161, at *2 (M.D. Fla. Sept. 24, 2012) ("In addition to 'non-core' claims, this action includes at least one 'core' claim (fraudulent transfer under [§ 544(b)]).").

Some courts, on the other hand, have concluded that claims based upon state law (such as TUFTA claims) do not invoke substantive rights created by federal bankruptcy law and could exist outside of the bankruptcy context. *See, e.g., In re The Heritage Organization, L.L.C.*, 454 B.R. 353, 360–61 (Bankr. N.D. Tex. 2011) ("The claim under [TUFTA] does not invoke a right created by title 11, and clearly exists outside of bankruptcy. Therefore, at most, it is a 'related to' claim under section 1334(b).").

Then, there are some courts that decline to make any determination on whether a state law claim brought pursuant to § 544 is core or non-core. *See, e.g., In re Extended Stay, Inc.*, 466 B.R. 188, 205 (S.D.N.Y. Nov. 10, 2011) ("Because the classification of these [state law] claims as core or non-core is not dispositive of the withdrawal motions, I will consider the remaining factors without deciding whether these claims are core or non-core."); *In re Fairfield Sentry Ltd.*, No. 10 Civ. 7340, 2010 WL 4910119, at *2 (S.D.N.Y. Nov. 22, 2010) (concluding that § 157(b)(3) requires that the bankruptcy court decide the issue of whether a claim is core or non-core and states that "[t]he Court [ ] moves to the other relevant factors without reaching a conclusion on [whether the claims are core or non-core], which is not singularly dispositive"); *In re Magnesium Corp. of America*, 2004 WL 1161172, at *1 n. 1 (S.D.N.Y. May 24, 2004) ("It suffices to note at this juncture that there are core claims and claims which appear on their face to be non-core claims. I need not finally determine whether the apparently non-core claims are, indeed, non-core claims at this juncture."); *Good v. Kvaerner U.S., Inc.*, 2003 WL 21755782, at *2 n. 6 (S.D. Ind. July 25, 2003) (analyzing only whether a claim is "related to" a case under title 11 and stating that "[w]e do not address whether this proceeding is core or

non-core, because such an analysis is unnecessary to our ruling").

The Court is persuaded by those courts who have held that a fraudulent transfer claim under state law, even though brought pursuant to § 544, is nevertheless a "related to" proceeding, not a core proceeding. Indeed, although not in the context of an analysis regarding a motion to withdraw reference, the Fifth Circuit has stated that: "The district court treated [the debtor's] TUFTA claim as being 'related to' the bankruptcy rather than a core bankruptcy claim. *We agree with this characterization.*" *In re Galaz,* 765 F.3d 426, 431 (5th Cir. 2014) (emphasis added).

■ Thus, in the Adversary Proceeding, this Court concludes that the Plan Agent has brought both core claims and non-core claims. Where an adversary proceeding encompasses both core and non-core claims, courts have held that withdrawal of the reference is appropriate because it promotes judicial efficiency. *See Mirant Corp.,* 337 B.R. at 122; *see also In re Dallas Roadster, Ltd.,* No. 11-43725, 2013 WL 5758632, at *2 (Bankr. E.D. Tex. Sept. 27, 2013), *reported and recommendation adopted,* No. 11-43725, 2013 WL 5769916 (E.D. Tex. Oct. 21, 2013). Adjudicating all of the claims, both core and non-core, in the District Court eliminates the prospect of an appeal from the bankruptcy court's adjudications of core claims and dispenses with the need for the District Court to conduct a *de novo* review of proposed findings and conclusions of the bankruptcy court after a trial in the bankruptcy court as to the non-core claims. *See Mirant Corp.,* 337 B.R. at 122. "The creation of two sets of proceedings could create judicial inefficiency, which should be avoided. This weighs in favor of withdrawal *in whole.*" *In re Gulf States Long Term Acute Care of Covington, L.L.C.,* 455 B.R. 869, 879 (E.D. La. 2011); *accord In re*

*Tastee Donuts, Inc.,* 137 B.R. 204, 207 (E.D. La. 1992) (finding that even where an adversary proceeding involved both core and non-core matters, in the interests of judicial efficiency, the reference should be withdrawn for the entire adversary proceeding).

Because splitting the Plan Agent's core and non-core claims into two proceedings would be judicially inefficient, this first factor favors withdrawal of the reference.

2. Whether Promotion of Uniformity in Bankruptcy Administration will be Achieved

"If a bankruptcy court is already familiar with the facts of the underlying action, then allowing that court to adjudicate the proceeding will promote uniformity in the bankruptcy administration." *In re British Am. Props. III, Ltd.,* 369 B.R. at 327; *see Palmer & Palmer, P.C. v. U.S. Trustee (In re Hargis),* 146 B.R. 173, 176 (N.D. Tex. 1992); *Kenai Corp. v. Nat'l Union Fire Ins. Co. (In re Kenai Corp.),* 136 B.R. 59, 61 (S.D.N.Y. 1992). This Court has familiarized itself with the factual allegations in the Adversary Proceeding and has reviewed all of the pending pleadings—including the numerous motions to dismiss that have been filed and the Plan Agent's responses in opposition thereto. [*See* Findings of Fact Nos. 4, 6, 8, 9, 11, 12, 13, 14 & 15]. These circumstances weigh against withdrawal of the reference.

Moreover, the Plan Agent gave credible and uncontroverted testimony at the Hearing that promotion of uniformity in bankruptcy administration will be achieved if the reference is not withdrawn. Specifically, she testified that the undersigned judge already has substantial knowledge about Dr. Brown and BMC. Indeed, the undersigned judge has become extremely familiar with what the Plan Agent has referred to in her testimony as the "byzantine nature of [ ] Dr. Brown's business affairs"

with his 100% owned companies and numerous creditors.

The undersigned judge agrees with the Plan Agent's position. Indeed, the Plan Agent has filed 22 adversary proceedings to recover alleged fraudulent conveyances, and in Dr. Brown's individual bankruptcy, the trustee has filed 10 adversary proceedings to recover other alleged fraudulent conveyances. The undersigned judge has therefore already spent considerable time becoming familiar with all of the detail and background of how Dr. Brown and BMC made transfers to various and sundry individuals and corporations, including the several law firms who are the defendants in the Adversary Proceeding at bar.

Moreover, the undersigned judge has also spent considerable time adjudicating motions to compromise that have been filed in Dr. Brown's individual case, which in turn has added to the undersigned judge's knowledge about various pre-petition transfers that were made while Dr. Brown was in control of his own financial affairs and the financial affairs of BMC. In fact, this Court recently refused to approve a compromise of an adversary proceeding in Dr. Brown's individual case because, after learning about the payments made by Dr. Brown for BMC under a lease agreement that he himself did not execute, this Court concluded that the compromise was not in the best interest of the estate; stated differently, this Court concluded that the trustee was settling for too little. [Main Case No. 13–35892, Doc. No. 2427]. The trustee subsequently negotiated a more favorable settlement for the estate, which this Court then approved. [Id., Doc. No. 2447]. As with all of the matters relating to Dr. Brown or BMC, this Court has learned to constantly focus on asking just exactly who was making payment—Dr. Brown or BMC?—and just exactly who was receiving benefits because

of the payment: Dr. Brown, BMC, or some third party? This Court has no doubt that in the Adversary Proceeding, which involves several law firms who received transfers of money, this Court's knowledge about the financial affairs of Dr. Brown and BMC will be of more than nominal assistance in evaluating issues raised in pretrial motions.

In sum, the undersigned judge is extremely familiar with many of the transfers orchestrated by Dr. Brown and BMC, and this knowledge has allowed, and will continue to allow, the undersigned judge to quickly and uniformly adjudicate all disputes in BMC's corporate case, as well as in Dr. Brown's individual case.

Under these circumstances, this second factor works against withdrawal of the reference.

### 3. Whether Forum Shopping and Confusion will be Reduced

The Plan Agent initiated the Adversary Proceeding before this Court. The Defendants have not participated in the main bankruptcy case—for example, none of the Defendants have ever filed a proof of claim. Indeed, the Defendants became involved in this bankruptcy only when the Plan Agent brought this Adversary Proceeding. The Defendants have a good faith right to a jury trial in the District Court (*see* sixth factor below), and nothing in the record indicates that any of them are forum shopping. In fact, the Plan Agent agrees that the Defendants are not forum shopping. [Hr'g Tr. 113:16–19, Dec. 16, 2015]. Accordingly, the Defendants are not forum shopping by seeking a withdrawal of the reference, but is simply seeking to enforce its right to a jury trial. *See In re British Am. Properties III, Ltd.*, 369 B.R. at 327 (determining that the defendant did not engage in forum shopping because the trustee brought the defendant into the bankruptcy proceeding and the defendant

merely south to enforce its right to a jury trial). This factor therefore favors withdrawal of the reference.

#### 4. Whether There will be Economical Use of the Plan Agent's and Creditors' resources

Bankruptcy aims to maximize the efficient use of resources to administer the debtor's estate and resolve related litigation. *Plan Adm'r v. Lone Star RV Sales, Inc. (In re Conseco Fin. Corp.)*, 324 B.R. 50, 55 (N.D. Ill. 2005). Here, the Plan Agent has given credible and uncontroverted testimony that she will spend less on attorneys' fees if the undersigned judge adjudicates the claims in the Adversary Proceeding. She believes this to be the case because of the undersigned judge's background and familiarity with the financial affairs of Dr. Brown and BMC—which will translate into this Court very quickly holding hearings on the pending motions to dismiss and issuing rulings expeditiously thereafter, and also handling any other pretrial matters quickly. This fourth factor therefore works against withdrawal of the reference.

#### 5. Whether the Withdrawal of Reference will Expedite the Bankruptcy Process

█ "A district court should consider the importance of the proceeding to the bankruptcy case and refuse to withdraw the reference if the withdrawal would unduly delay the administration of the bankruptcy case." *In re British Am. Props. III, Ltd.*, 369 B.R. at 328 (citing *In re Pruitt*, 910 F.2d 1160, 1168 (3d Cir. 1990)). At the Hearing, the Plan Agent credibly testified that withdrawal of the reference will not expedite the bankruptcy process. [Hr'g Tr. 32:3–14, Dec. 16, 2015]. Indeed, she expressed concern that there would be "considerable delay" if withdrawal of the reference did occur. [Hr'g Tr. 32:9, Dec. 16, 2015]. She further testified that she be-

lieves resolution of the disputes in the Adversary Proceeding can be achieved more quickly in this bankruptcy court because: (1) the undersigned judge has extensive knowledge of the main Chapter 11 case and its affiliated cases; (2) the undersigned judge has extensive knowledge of what the Plan Agent refers to as "byzantine nature of [ ] Dr. Brown's business affairs;" (3) the undersigned judge holds weekly hearings every Wednesday in the main cases, and adversary proceedings filed therein, in order to ensure that rulings are made timely so that distributions on allowed claims can be made as quickly as possible; and (4) the undersigned judge has already held multiple hearings in many of the 32 adversary proceedings involving fraudulent conveyances allegedly made by Dr. Brown and BMC. [Hr'g Tr. 29:15–30:13, Dec. 16, 2015]. In sum, the Plan Agent gave credible and uncontroverted testimony that withdrawal of the reference will not expedite the bankruptcy process, but rather could delay it insofar as she will not be able to make distributions to creditors as quickly as she desires.

Thus, this fifth factor weighs against withdrawal of the reference.

#### 6. Whether a Party has Demanded a Jury Trial

█ "A party against whom legal action has been brought to recover monetary damages and who has never filed a claim against the estate is entitled to a jury trial under the constitutional mandates of the Seventh Amendment to the United States Constitution, notwithstanding Congress' characterization of the action as a core proceeding." *Nu Van Tech., Inc. v. Cottrell, Inc. (In re Nu Van Tech., Inc.)*, No. 01-49589-DML-11, 2003 WL 23785355, at *2 (Bankr. N.D. Tex. Oct. 14, 2003). Here, the Plan Agent has sued the Defendants under §§ 548 and 550, and also under sections 24.005 and 24.006 of the Tex. Bus. &

Com. Code, to avoid various transfers of funds made by BMC to the Defendants in the total amount of at least $6.4 million; however, none of the Defendants have filed proofs of claim in the main case. Thus, the Defendants are entitled to a jury trial under *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 64, 109 S.Ct. 2782, 106 L.Ed.2d 26 (1989); the demands that each of the Defendants have made for a jury trial are wholly legitimate ones. Indeed, the Plan Agent does not dispute the assertions by the Defendants that each of them is entitled to a jury trial. [Adv. Doc. No. 53, ¶ 19] ("The Plan Agent does not dispute that Movants have the right to a jury trial as to the Plan Agent's fraudulent transfer claims under *Granfinanciera*."). Under these circumstances, the sixth factor weighs heavily in favor of withdrawal of the reference.

## V. Conclusion

■ The undersigned bankruptcy judge believes that three of the six of the *Holland America* factors favor withdrawal of the reference, and the other three factors work against withdrawal. However, this Court gives more weight to the sixth factor than to any one of the other factors because of the importance of the right to a jury trial. *See Levine v. M & A Custom Home Builder & Developer, LLC*, 400 B.R. 200, 205 (S.D. Tex. 2008) (adopting the report and recommendation of the bankruptcy court, which held that because the defendant had demanded a jury trial—to which the defendant was entitled—the reference must be withdrawn). Under these circumstances, the undersigned judge believes that cause exists under 28 U.S.C. § 157(d), and therefore recommends that the District Court withdraw the reference of the Adversary Proceeding.

Although this Court recommends withdrawal of the reference, the Plan Agent gave credible, uncontroverted and convincing testimony that the undersigned judge should handle all pretrial matters. While the Defendants oppose the Plan Agent's position, the undersigned judge believes that the Plan Agent's position is more compelling. Therefore, the undersigned judge recommends that the District Court, if it withdraws the reference, then refer the Adversary Proceeding back to the undersigned judge for adjudication of all pretrial matters. *See Levine*, 400 B.R. at 207 ("The right to a jury trial does not preclude a bankruptcy court from resolving pre-trial dispositive motions. A right to a jury trial does not arise until jury issues are presented."). Indeed, the undersigned judge has already reviewed the numerous motions to dismiss, and responses thereto, and is now ready to hold hearings on these motions and thereafter issue timely rulings.