# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 15-51194

United States Court of Appeals
Fifth Circuit

**FILED**

March 10, 2017

Lyle W. Cayce
Clerk

In the Matter of:    LISA ANN GALAZ

Debtor

RAUL GALAZ and SEGUNDO SUENOS, L.L.C.,

Appellants

v.

LISA ANN GALAZ and JULIAN JACKSON

Appellees

Appeal from the United States District Court
for the Western District of Texas

Before SMITH, CLEMENT, and SOUTHWICK, Circuit Judges.

EDITH BROWN CLEMENT, Circuit Judge:

Appellants Raul Galaz ("Raul") and Segundo Suenos, LLC[1] appeal the district court's judgment awarding actual and exemplary damages to debtor Lisa Ann Katona, formerly known as Lisa Galaz ("Lisa"). We AFFIRM the judgment of the district court.

---

[1] "Segundo Suenos" was likely formed with the intention of reading "Segundo Sueños," which is Spanish for "Second Dreams." This opinion will use the spelling used by the entity itself.

No. 15-51194

I

This case is on appeal before this court for the second time. *See Galaz v. Galaz* (*In re Galaz I*), 765 F.3d 426 (5th Cir. 2014). It is just the latest episode in a series of lawsuits dating back ten years.

Raul founded Artist Rights Foundation, LLC ("ARF") with Julian Jackson ("Jackson") in 1998, and each originally held a 50 percent membership interest in ARF. When Lisa divorced Raul in 2002, she obtained a 25 percent economic interest in ARF—half of his 50 percent interest. ARF's assets consisted of the rights to the royalties from the music of the Ohio Players, a former funk band.

In June 2005, without the knowledge of Jackson or Lisa, Raul transferred ARF's royalty rights to "Segundo Suenos"—which at the time, "was not organized as a business entity under the laws of any state." *In re Galaz I*, 765 F.3d at 428. In September 2005, Raul assisted his father, Alfredo Galaz ("Alfredo") in establishing Segundo Suenos, LLC ("Segundo") in Texas. Raul asserts that Alfredo is the "sole owner" of Segundo. Soon after the transfer, the royalties began to generate a substantial amount of revenue. Segundo received nearly a million dollars from the transfer until trial in February 2010. Lisa did not receive any share of the revenue, despite her 25 percent interest in ARF. Raul unilaterally dissolved ARF in December 2006.

Lisa filed for Chapter 13 bankruptcy in December 2007. In April 2008, Lisa brought this adversary proceeding against Raul, Alfredo, and Segundo, alleging that they fraudulently transferred the assets of ARF to Segundo and defrauded Lisa of her interest. Raul, Alfredo, and Segundo filed a third-party complaint against Jackson, and Jackson asserted seven counterclaims against them. *Id.* at 429.

"After a five-day bench trial, the bankruptcy court found that the transfer of assets from ARF to Segundo Suenos was invalid, that it constituted

2

No. 15-51194

a fraudulent transfer under TUFTA, that Raul owed fiduciary duties to [Jackson] and had breached those duties, and that Raul owed no fiduciary duties to Lisa." *Id.* The bankruptcy court held Raul and Segundo liable, but held Alfredo not liable. *Id.* at 429 & n.4. The bankruptcy court awarded actual and exemplary damages to Lisa and Jackson. *Id.* at 429.

Raul and Segundo appealed to the district court, which affirmed the bankruptcy court's judgment as to liability but vacated and remanded for redetermination of actual and exemplary damages. *Id.* On remand, the bankruptcy court awarded actual and exemplary damages consistent with the district court's instructions. *Id.* Appellants again appealed to the district court, which affirmed. *Id.* Appellants then appealed to this court. *Id.*

This court vacated and remanded the bankruptcy court's judgment on jurisdictional grounds, with instructions to dismiss Jackson's third-party counterclaims for lack of subject-matter jurisdiction. *Id.* at 431, 434. This court also determined that Lisa's claims were non-core bankruptcy claims, and remanded for the district court to enter final judgment after further consideration. *Id.*

On remand, the district court referred this adversary proceeding to the bankruptcy court. The bankruptcy court submitted proposed findings of fact and conclusions of law pursuant to 28 U.S.C. § 157(c)(1). After *de novo* review, the district court adopted those findings of fact and conclusions of law, invalidating the transfer of assets from ARF to Segundo and awarding Lisa actual and exemplary damages. Raul and Segundo again appeal.

II

When the district court enters final judgment in a bankruptcy case, this court "review[s] the district court's findings of fact for clear error and its conclusions of law *de novo*." *Monge v. Rojas* (*In re Monge*), 826 F.3d 250, 254 (5th Cir. 2016). "In examining for clear error, we review the record as a whole

3

No. 15-51194

and not just the evidence supporting the finding." *Stanley v. U.S. Bank Nat'l Ass'n* (*In re TransTexas Gas Corp.*), 597 F.3d 298, 304 (5th Cir. 2010). "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 574 (1985).

### III

### A

The district court held that the purported transfer of the music rights from ARF to Segundo was fraudulent under the Texas Uniform Fraudulent Transfers Act ("TUFTA"), Tex. Bus. & Com. Code § 24.001 *et seq*. TUFTA allows a court to set aside a fraudulent transfer. § 24.008(a)(1). The district court explicitly adopted the bankruptcy court's finding that Raul acted with actual intent to defraud Lisa. We affirm.

We review for clear error because "whether the transfer was made with the actual intent to defraud creditors is a fact question." *Walker v. Anderson*, 232 S.W.3d 899, 914 (Tex. Ct. App. 2007). Because "direct proof of fraudulent intent is often unavailable," courts may consider circumstantial evidence to determine whether the transfer was made with fraudulent intent. *Id*. Section 24.005(b) of TUFTA sets forth a "non-exhaustive list of facts and circumstances, which are known as the 'badges of fraud,' to be considered in determining whether a transfer was made with actual intent to defraud." *Id*. (citing § 24.005(b)). "An individual badge of fraud is not conclusive, but a concurrence of many badges in the same case will always make out a strong case of fraud." *Id*. "The judgment creditor has the burden to prove the fraudulent transfer by a preponderance of the evidence." *Id*. at 913.

Although the district court did not explicitly identify which badges of fraud are present, it emphasized the following facts: "Raul transferred all of ARF's royalty rights to Segundo Suenos"; "Segundo Suenos was not organized

4

as a business entity under the laws of any state" until three months after the transfer; "Raul assisted his father in filing the documents required to establish Segundo Suenos as a Texas LLC"; Raul did not tell Lisa or Jackson about the transfer; and Segundo gave no consideration to ARF for the transfer of the royalty rights. Reviewing the record as a whole, the district court did not clearly err in determining that Raul acted with actual intent to defraud in transferring the royalty rights from ARF to Segundo.

At least six badges of fraud are present. First, Raul transferred ARF's assets to "an insider"—his father, Alfredo, who purportedly owns Segundo.[2] *See* § 24.005(b)(1).

Second, Raul "retained possession or control of the property transferred after the transfer." § 24.005(b)(2). There is evidence that Raul managed Segundo and the royalty rights after the transfer. Raul admitted that he consulted with Alfredo and helped him with the process of creating Segundo. He testified at trial that he "heavily influenced" Alfredo's decisions in Segundo. Appellants introduced no convincing evidence that Alfredo exercised any control over the royalty rights.

Third, Raul "concealed" the transfer from Lisa. § 24.005(b)(3). Appellants do not argue that Raul told Lisa about the transfer.

Fourth, the transfer was of substantially all of ARF's assets. § 24.005(b)(5). Appellants do not dispute this fact.

Fifth, ARF did not receive "reasonably equivalent" consideration for the transfer of the royalty rights. § 24.005(b)(8). Neither Alfredo nor Segundo—which was not formed as a Texas entity until three months after the purported transfer—paid "any money at all" to ARF at the time of the transfer. Instead,

---

[2] Appellants do not argue that the transfer was not to an insider. They argue only, without any precedential support, that transfer to an insider should not be considered a badge of fraud where transfer is first offered to a non-insider.

No. 15-51194

"[t]he terms of the transfer purportedly obligated Alfredo and Segundo Suenos to pay the liability that Raul recited in the Demand Letter: Raul's out-of-pocket expenses, expenses for Raul's 'services,' and the past-due California franchise taxes." It is true that Segundo paid ARF's tax obligations to California, totaling $11,793.05, in November and December 2006. But Segundo paid those obligations from revenue *generated by the royalty rights*. There is no evidence that ARF received any consideration for the transfer of the royalty rights that was independent of revenue generated by the royalty rights.

Sixth, ARF "was insolvent or became insolvent shortly after the transfer was made." § 24.005(b)(9). Raul unilaterally dissolved ARF in December 2006.[3] When ARF was dissolved, it had no assets and no liabilities.

The district court did not clearly err in adopting the bankruptcy court's finding of fraudulent intent. The presence of these badges of fraud is sufficient evidence that Raul transferred ARF's royalty rights with the actual intent of defrauding Lisa of her 25 percent economic interest in ARF. Appellants' arguments to the contrary are entirely unavailing.[4] The district court did not err in invalidating the purported transfer.[5]

B

The district court awarded Lisa $241,309.10 in actual damages. The royalties generated $969,317.93 in gross income between the time of the

---

[3] Raul admitted that he "represented to the State of California that the dissolution of [ARF] was by a vote of all the members."

[4] Appellants' argument that Raul had no motive to defraud Lisa defies credulity. Raul transferred the royalty rights from ARF, in which he held only a 25 percent membership interest, to Segundo, a company purportedly owned by Raul's father but apparently completely within Raul's control, as inferred by Segundo's payments to and on behalf of Raul and his friends and family. Because of this transfer, Raul did not account to Lisa for the revenue—almost a million dollars—generated by the royalty rights.

[5] We also affirm the district court's determinations that Appellants are collaterally estopped from arguing that the transfer was valid and that Raul did not have the authority to unilaterally transfer the royalty rights.

fraudulent transfer and trial. To restore Lisa to the position she would have had if the fraudulent transfer had not occurred, the district court awarded Lisa 25 percent of the gross income—which was $242,329.48—less certain allowable and reasonable expenses.[6] The district court declined to reduce Lisa's actual damages by Segundo's alleged expenses because Segundo is "a wholly distinct entity formed for the purpose of defrauding [Lisa] of her share of revenue." Appellants also failed to produce credible evidence of those alleged expenses. We affirm.

Section 24.008(a)(3)(C) of TUFTA is an equitable provision which states that a creditor may obtain "any other relief the circumstances may require." This equitable provision "is quite broad." *Airflow Hous., Inc. v. Theriot*, 849 S.W.2d 928, 934 (Tex. Ct. App. 1993). Section 24.009(c)(1) provides that actual damages for the value of property fraudulently transferred are "subject to adjustment as the equities may require." Appellants argue that, as a matter of law, the district court should have limited compensatory damages to the value of the royalty rights at the time of the transfer from ARF to Segundo, and that the value was "nominal" at that time. Although Appellants acknowledge that Section 24.009(c)(1) authorized the district court to adjust the value "as the equities may require," they argue that Section 24.009(c)(2) restricts the district court from adjusting the value "to include the value of improvements made by a good faith transferee." Because the transfer was fraudulent and Segundo is not a good faith transferee, the district court did not err in applying Section 24.009(c)(1) without the restriction in Section 24.009(c)(2).

---

[6] Lisa's actual damages award is reduced by "her proportionate share of reasonable and necessary expenses that were incurred by ARF prior to the date of the transfer." Between 2003 and 2005, Lisa was responsible for 25 percent of the unpaid franchise taxes—that is, $1,020.38.

No. 15-51194

Appellants also argue that "[c]onsidering all appropriate expenses, Segundo Suenos actually has produced no net operating income"—and thus, Lisa should not receive *anything* in actual damages. But Appellants provided insufficient evidence of reasonable expenses. Segundo apparently "did not regularly keep any profit and loss statements or balance sheets" and failed to present "any evidence of invoices, receipts, work orders, or other documentation." Segundo requested that the district court, in calculating Lisa's actual damages, deduct hundreds of thousands of dollars in unsupported expenses from the revenue generated by the royalty rights. The district court did not err in declining to reduce Lisa's award by these alleged expenses, especially given the finding of actual intent to defraud and the broad remedial authority conferred by Sections 24.008(a)(3)(c) and 24.009(c)(1) of TUFTA.

C

The district court awarded Lisa $250,000 in exemplary damages. Appellants argue that the district court clearly erred in awarding exemplary damages because: (1) Lisa did not establish any actual damages; and (2) no evidence supports exemplary damages. The first argument is unavailing—Lisa is entitled to $241,309.10 in actual damages. The second argument fails because the district court did not clearly err in finding that Lisa proved by clear and convincing evidence that her loss was caused by the Appellants' fraud, malice, or gross negligence. *See Shafer v. Army & Air Force Exch. Serv.*, 376 F.3d 386, 396 (5th Cir. 2004) (if the district court applies the correct standard of review, this court "review[s] the district court's factual findings for clear error"). There is ample evidence supporting the finding of actual intent to defraud.

Appellants also summarily argue, without citing any precedent, that "it was error for the lower courts to simply double the already-inflated compensatory damages in order to assess punitive damages" and that the

district court clearly erred when it assessed exemplary damages against Segundo because "there was no determination that . . . Segundo . . . engaged in any objectionable conduct." These arguments are waived for lack of adequate briefing. *See Procter & Gamble Co. v. Amway Corp.*, 376 F.3d 496, 499 n.1 (5th Cir. 2004). The district court did not err in awarding Lisa exemplary damages against both Raul and Segundo.

## IV

We AFFIRM the judgment of the district court. We make no comment on the effect of the judgment on non-parties.