# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 15-50919

United States Court of Appeals
Fifth Circuit

**FILED**

October 28, 2016

Lyle W. Cayce
Clerk

In the Matter of:  LISA ANN GALAZ,

>     Debtor

ALFRED GALAZ,

>     Appellant

v.

LISA A. KATONA, formerly known as Lisa Ann Galaz,

>     Appellee

Appeal from the United States District Court
for the Western District of Texas

Before WIENER, CLEMENT, and COSTA, Circuit Judges.

EDITH BROWN CLEMENT, Circuit Judge:

The bankruptcy court enjoined Alfred Galaz ("Galaz") from pursuing any claims related to Worldwide Subsidy Group against his former daughter-in-law, Lisa Katona ("Katona"). Galaz appealed the bankruptcy court judgment to the district court. The district court affirmed, finding that the bankruptcy court had jurisdiction to decide the case and that the bankruptcy court properly barred Galaz's claims. Galaz appeals to this court. We AFFIRM.

No. 15-50919

## I.

Raul Galaz ("Raul") and his legal assistant, Marian Oshita ("Oshita"), formed two limited liability companies, collectively called Worldwide Subsidy Group ("WSG"), to collect royalties owed to film and television distributors. Raul owned a 75 percent interest in WSG, and Oshita owned a 25 percent interest in WSG. At the time of WSG's formation, Raul was married to Lisa Katona (formerly Galaz). When Raul and Katona subsequently divorced, Katona received half of Raul's interest in WSG. Raul then sold his remaining 37.5 percent WSG interest to Oshita for $50,000. She paid for his interest from WSG's accounts as an offset against unreimbursed expenses purportedly owed to her. After Raul transferred his remaining interest to Oshita, Katona owned a 37.5 percent interest in WSG and Oshita owned a 62.5 percent interest in WSG.

Shortly thereafter, Katona learned that Oshita's claim for unreimbursed expenses was fraudulent, and Katona filed suit against her in California state court. Following a jury trial, the state court awarded Katona the 37.5 percent interest that Raul had sold to Oshita, as well as $18,750 in damages—which Oshita failed to pay. This judgment left Katona with a 75 percent interest and Oshita with a 25 percent interest in WSG.

After the judgment, Katona assigned half of her interest to Raul's sister, Denise Vernon ("Vernon"). Vernon then filed suit against Katona in Texas state court to determine ownership and control of WSG. Vernon and Raul, a third-party defendant in the case, argued that Oshita had withdrawn from the company and was not entitled to her 25 percent interest.

Before the case was resolved, Katona filed for Chapter 13 bankruptcy and the WSG litigation was removed to bankruptcy court as a separate adversary proceeding. The bankruptcy court approved a settlement between

2

Raul, Vernon, and Katona regarding that litigation ("2008 Settlement Agreement"). The 2008 Settlement Agreement provided for: (1) a one-time distribution from WSG of $50,000 to Katona; (2) monthly payments from WSG of $4,300 to Katona; (3) a one-time distribution from WSG of $83,000 to Vernon; (4) monthly payments from WSG of $5,000 to Vernon; and (5) an annual salary of $67,500 and back-pay of $221,000 from WSG to Raul. As part of the settlement, Brian Boydston was appointed Business Manager of WSG. The bankruptcy court confirmed Katona's Chapter 13 plan.

Katona and Vernon disagreed over WSG's operations, and Katona brought another adversary proceeding against WSG and Vernon. Katona requested that the bankruptcy court remove Boydston as Business Manager, appoint a receiver for WSG, and liquidate the company. Katona and Vernon reached a settlement in that action ("2011 Settlement Agreement"). The 2011 Settlement Agreement provided, in part, that Vernon purchase Katona's interest in WSG and "any unliquidated claims against third parties relating to WSG, including claims against Marian Oshita." Katona was thus "deemed to have sold, transferred, and assigned to Denise Vernon any and all of [her] rights, title, and interest in WSG, including but not limited to . . . any claims against third parties relating to WSG, including claims against Marian Oshita." The 2011 Settlement Agreement also provided that Vernon release all present and future claims against and rights to sue Katona. After the bankruptcy court approved the 2011 Settlement Agreement, Vernon assigned all claims against Oshita that she received under the agreement to her and Raul's father, Alfred Galaz. In 2012, Katona received a discharge and her bankruptcy case was closed.

Galaz then filed suit in California state court to enforce Katona's unpaid money judgment against Oshita, which he believed he had received through

No. 15-50919

Vernon's assignment.[1] The state court found in his favor and foreclosed on Oshita's WSG interest to satisfy the judgment. As successor-in-interest to Oshita, Galaz then sued Katona in Texas state court, alleging that Katona owed past monetary distributions on Oshita's interest in WSG ("Oshita claims"). Katona removed the case to bankruptcy court as an adversary proceeding in her Chapter 13 bankruptcy suit. Galaz then moved to remand. The bankruptcy court granted Galaz's motion, finding that it did not have jurisdiction because Galaz's complaint raised only state-law claims. The bankruptcy court noted, however, that it arguably would have jurisdiction if Katona had sued for declaratory judgment.

Katona thus began an adversary proceeding against Galaz in bankruptcy court, seeking to enjoin him from pursing the Oshita claims. The parties filed cross-motions for summary judgment. The bankruptcy court granted Katona's motion, in part, and enjoined Galaz from pursuing any WSG-related actions against her. Specifically, the bankruptcy court found that the 2011 Settlement Agreement, which discharged Vernon and Katona's rights to sue one another, barred Galaz's claims. Galaz appealed to the district court, challenging the bankruptcy court's jurisdiction and its determination that his claims were barred. The district court affirmed. Galaz appeals.

II.

"Subject-matter jurisdiction is a question of law which we review *de novo*." *Beitel v. OCA, Inc.* (*In re OCA, Inc.*), 551 F.3d 359, 366 (5th Cir. 2008). "When reviewing a district court's affirmance of a bankruptcy court's judgment, this court applies the same standard of review to the bankruptcy court decision that the district court applied." *Galaz v. Galaz* (*In re Galaz*), 765

---

[1] The parties dispute whether, as part of the settlement, Katona assigned her right to the money judgment against Oshita.

F.3d 426, 429 (5th Cir. 2014) (internal quotation marks omitted). We review findings of fact for clear error and legal conclusions *de novo. Id.*

## III.

## A.

Galaz first argues that the bankruptcy court lacked jurisdiction to enjoin his state-law claims. His arguments rest primarily on the fact that the bankruptcy court closed Katona's Chapter 13 bankruptcy in 2012. Katona contends that the bankruptcy court had jurisdiction because Galaz violated her discharge rights under title 11. A bankruptcy court's jurisdiction extends to "all civil proceedings arising under title 11, or arising in or related to cases under title 11." *See* 28 U.S.C. § 1334(b). Before confirmation of the bankruptcy plan, a proceeding is related to the bankruptcy case if the "outcome could conceivably have any effect on the estate being administered in bankruptcy." *Fire Eagle, L.L.C. v. Bischoff* (*In re Spillman Dev. Grp., Ltd.*), 710 F.3d 299, 304 (5th Cir. 2013) (internal quotation marks omitted). After confirmation, "the debtor's estate, and thus bankruptcy jurisdiction, ceases to exist, other than for matters pertaining to the implementation or execution of the plan." *Newby v. Enron Corp.* (*In re Enron Corp. Sec.*), 535 F.3d 325, 335 (5th Cir. 2008) (quoting *Craig's Stores of Tex., Inc. v. Bank of La.* (*In re Craig's Stores of Tex., Inc.*), 266 F.3d 388, 390 (5th Cir. 2001)).

A bankruptcy court maintains "jurisdiction to interpret and enforce its own prior orders." *Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 151 (2009). Subject matter jurisdiction remains in the bankruptcy court, even after a bankruptcy case is closed, "to assure that the rights afforded to a debtor by the Bankruptcy Code are fully vindicated." *Padilla v. Wells Fargo Home Mortg., Inc.* (*In re Padilla*), 379 B.R. 643, 652 n.4 (Bankr. S.D. Tex. 2007) (relying on *Bradley v. Barnes* (*In re Bradley*), 989 F.2d 802, 804 (5th Cir. 1993)).

No. 15-50919

Here, Galaz's underlying state court action alleges that Katona controlled WSG's finances and failed to pay out proceeds from WSG in accordance with Oshita's membership interest. Even viewed through the narrower lens of post-confirmation bankruptcy jurisdiction, Galaz's Oshita claims relate principally to pre-confirmation activity between the parties. There was discord between Oshita and Katona during the reorganization as to the respective ownership interests in WSG. Indeed, that dispute formed the basis of the 2008 Settlement Agreement, which provided funds for Katona to pay off her debts under the plan. Galaz's cause of action for nonpayment is a preconfirmation claim that—according to Katona—was subject to the bankruptcy court's discharge order.[2]

Galaz's suit in state court is arguably a violation of Katona's discharge rights, directly implicating the bankruptcy court's "arising under" jurisdiction. *See Ins. Co. of N. Am. v. NGC Settlement Trust & Asbestos Claim Mgmt. Co.* (*In re Nat'l Gypsum Co.*)*,* 118 F.3d 1056, 1064 (5th Cir. 1997). The state law causes of action asserted by Galaz bear on the interpretation and execution of Katona's plan. Even though Katona's bankruptcy case was closed, the bankruptcy court retains jurisdiction to consider violations of the discharge order; the order of discharge necessarily implicates the implementation or

---

[2] The bankruptcy court explicitly declined to make any findings on whether the Oshita claims were discharged, and dismissed Katona's claims for discharge violations without prejudice. But jurisdiction to hear and decide a proceeding attaches before—and regardless of how—a court rules on the merits of the claim. *See Bradley*, 989 F.2d at 804–05 (finding that the bankruptcy court had subject matter jurisdiction even though the bankruptcy court did not rule on the merits of the disputed debt). When a federal claim appears on the face of the complaint, dismissal for want of jurisdiction is proper only when the claim is "patently without merit." *Young v. Hosemann*, 598 F.3d 184, 188 (5th Cir. 2010). Katona alleges that the Oshita claims were discharged in her bankruptcy proceedings, in part, because Oshita had constructive or actual notice of her bankruptcy and failed to assert a claim. We hold that Katona's allegations meet the low pleading burden sufficient to establish jurisdiction.

execution of the plan. *See Bradley*, 989 F.2d at 804. The alleged violation of Katona's discharge rights brings this case within the bankruptcy court's post-confirmation jurisdiction. *See Local Loan Co. v. Hunt*, 292 U.S. 234, 241 (1934) ("[It is] the authority of the bankruptcy court to entertain the present proceeding, determine the effect of the adjudication and [discharge] order, and enjoin petitioner from its threatened interference therewith.").

### B.

Galaz next contends that the bankruptcy court lacked statutory authority to enter final judgment because these proceedings do not constitute a "core" claim. Katona counters that her action for declaratory relief and an injunction is a core proceeding that provides the bankruptcy court statutory authority. "A bankruptcy court's statutory authority derives from 28 U.S.C. § 157(b)(1), which designates certain matters as 'core proceedings' and authorizes a bankruptcy court to determine the matters and enter final judgments." *Galaz*, 765 F.3d at 431. "If the proceeding involves a right created by the federal bankruptcy law, it is a core proceeding." *Spillman Dev. Grp.*, 710 F.3d at 305. For non-core proceedings, a bankruptcy judge shall "submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be entered by the district judge . . . ." 28 U.S.C. § 157(c)(1).

Galaz argues that the claims asserted here are state-law defenses that cannot constitute core proceedings. "[B]ut even such claims may be considered core if they are dependent upon the rights created in bankruptcy." *Spillman Dev. Grp.*, 710 F.3d at 305 (internal quotation marks omitted) (quoting *Wood v. Wood* (*In re Wood*), 825 F.2d 90, 97 (5th Cir. 1987)). Katona alleges in her claim for declaratory relief that her discharge rights—statutory rights provided for under the Bankruptcy Code—are being violated. The bankruptcy

court decided that the 2011 Settlement Agreement, which the bankruptcy court approved and is the source of Galaz's ownership to the Oshita claims, bars his suit. This action presents a core proceeding over which a bankruptcy court may enter final judgment. *See Nat'l Gypsum*, 118 F.3d at 1063–64 ("Although a discharge in bankruptcy can constitute an affirmative defense to a state law contract claim, [a debtor's] action to enforce the discharge injunction . . . assert[s] a statutory right under the Bankruptcy Code . . . ."); *Harris v. Wittman* (*In re Harris*), 590 F.3d 730, 741 (9th Cir. 2009) (reasoning that a dispute over a post-petition settlement agreement "is much more like a public rights case than a private rights case" and is a "core" proceeding). The bankruptcy court's interpretation of the 2011 Settlement Agreement is determinative of Katona's claim, and the bankruptcy court's order was within its statutory authority.

## C.

Galaz next argues that the bankruptcy court was required by the mandatory abstention provision to abstain from adjudicating this case.[3] This court reviews the decision not to abstain for abuse of discretion. *See Edge Petroleum Operating Co. v. GPR Holdings, L.L.C.* (*In re TXNB Internal Case*), 483 F.3d 292, 299 (5th Cir. 2007). This court has interpreted 28 U.S.C. § 1334(c)(2) to mandate federal court abstention where, among other things, "the claim is a non-core proceeding." *Id.* at 300. Here, the bankruptcy court did not abuse its discretion in refusing to abstain because, as previously discussed,

---

[3] Galaz also argues that the bankruptcy court should have abstained from hearing this case under the permissive abstention statute. *See* 28 U.S.C. § 1334(c)(1). This court, however, lacks jurisdiction to review that decision. *Id.* § 1334(d); *see Baker v. Simpson*, 613 F.3d 346, 352 (2d Cir. 2010) ("[D]ecisions on permissive abstention, which lie within the discretion of the bankruptcy court, are not subject to review by the court of appeals. We therefore lack jurisdiction to decide whether the district court's decision on permissive abstention was correct.").

the proceeding at issue is "core" under § 157(b). *See Gober v. Terra + Co.* (*In re Gober*), 100 F.3d 1195, 1206 (5th Cir. 1996) ("Mandatory abstention applies only to non-core proceedings . . . .").

## D.

Galaz argues that the bankruptcy court erred in finding his Oshita claims barred by res judicata, compromise and settlement, and accord and satisfaction because (1) Katona did not raise these defenses in her pleadings and (2) these defenses are meritless. We address each of Galaz's arguments in turn.

### 1.

"Bankruptcy Rule 8006 provides that in an appeal to a district court, the appellant must file a statement of the issues to be presented."[4] *McClendon v. Springfield* (*In re McClendon*), 765 F.3d 501, 506 (5th Cir. 2014). "It is clear under the law of this circuit that an issue that is not designated in the statement of issues in the district court is waived on appeal . . . ." *Id.* (internal quotation marks omitted). Bankruptcy Rule 8006 serves a specific purpose: it enables a redesignation of the appellate record assembled in the bankruptcy court. *See M.A. Baheth & Co. v. Schott* (*In re M.A. Baheth Const. Co.*), 118 F.3d 1082, 1085 n.2 (5th Cir. 1997). "After an immediate appeal, a party may well narrow the focus of its efforts on the second appeal and a redesignation of the record may eliminate unnecessary material." *Id.*

When Galaz appealed to the district court, he filed a Bankruptcy Rule 8006 statement of the issues that raised, in relevant part, this question:

> Whether the Bankruptcy Court erred by rendering judgment in favor of Plaintiff and against Defendant Alfred Galaz where

---

[4] As part of the December 2014 amendments to the Federal Rules of Bankruptcy, Rule 8006 became Rule 8009. Galaz filed his statement of issues before the amendments and thus the parties and courts below refer to Rule 8006.

No. 15-50919

> Plaintiff failed to meet her summary judgment burden of establishing the grounds presented in her Motion for Summary Judgment and where Defendants raised a genuine, material issue of fact as to Plaintiff's claims against them.

Galaz argues that this issue naturally encompasses the argument that he later briefed before the district court: Whether "the bankruptcy court erred in granting summary judgment based upon res judicata, compromise and settlement, and accord and satisfaction because these defenses were never raised in Katona's pleadings." But this assertion construes his statement of the issues too broadly. The purpose of Bankruptcy Rule 8006 is to narrow the record on appeal. Drafting a sweeping statement of issues flouts that purpose. The statement of the issues need not "be precise to the point of pedantry" to avoid waiver. *In re Am. Cartage, Inc.*, 656 F.3d 82, 91 (1st Cir. 2011). There is no indication in Galaz's statement of the issues, however, that he intended to challenge the bankruptcy court's grant of summary judgment on grounds *not* urged by Katona. His statement of the issues concerns only whether Katona met her summary judgment burden. His statement of the issues does not fairly encompass his later argument that the bankruptcy court should not have granted summary judgment on arguments that Katona did not raise. *See McClendon*, 765 F.3d at 506. Galaz failed to identify the particular issue that he sought to appeal: whether the bankruptcy court erred in granting summary judgment on defenses *not* presented in Katona's motion for summary judgment. We hold that Galaz waived that issue.

2.

"Once a final judgment on the merits of a prior action is entered, the parties and those in privity with them may not relitigate issues that either were or at least could have been brought in the action." *Cooper v. Int'l Offshore Servs., L.L.C.*, 390 F. App'x 347, 351 (5th Cir. 2010) (relying on *Oreck Direct,*

*LLC v. Dyson, Inc.*, 560 F.3d 398, 401 (5th Cir. 2009)). "[A] bankruptcy order is entitled to the effect of *res judicata . . . .*" *Republic Supply Co. v. Shoaf*, 815 F.2d 1046, 1051 (5th Cir. 1987). The bankruptcy court here found that the 2011 Settlement Agreement provided a broad release of liability to Katona and thus res judicata, compromise and settlement, and accord and satisfaction functioned to bar Galaz from bringing the Oshita claims. Galaz argues that these defenses are inapplicable because he brings his claims as a successor-in-interest to Oshita, not a successor-in-interest to Vernon, and thus the 2011 Settlement Agreement does not bar his claims. Because Galaz's claims arose through rights assigned from Vernon, however, this court finds that his claims are barred by res judicata.

Galaz was awarded Oshita's ownership interest in WSG by a foreclosure judgment in California state court on Katona's unpaid money judgment. He inherited the right to foreclose against Oshita through Vernon's assignment. Vernon inherited those rights from Katona by virtue of the 2011 Settlement Agreement, which also provided that Vernon release all present and future claims against and rights to sue Katona. This broad and exhaustive release included any claims related to or arising out of any event, act, omission, or condition involving WSG. As the district court correctly identified, this assignment history presents two issues: (1) whether Vernon's release carries over to Galaz; and (2) if so, whether the ownership interest in WSG that Galaz obtained is a substitute for the unpaid money judgment or a legally distinct right.

Under Texas law, an assignment is a "transfer of some right or interest." *Shipley v. Unifund CCR Partners*, 331 S.W.3d 27, 28 (Tex. App. 2010). It "operates to transfer to the assignee no greater right or interest than was possessed by the assignor . . . ." *Fla. Bahamas Lines, Ltd. v. The Steel Barge*

*"Star 800" of Nassau*, 433 F.2d 1243, 1246 (5th Cir. 1970). But "[a]n assignee's rights are also subject to defenses existing at the time of the assignment that would have been available against the assignor had there been no assignment." *Forex Capital Mkts., LLC v. Crawford*, No. 05-14-00341-CV, 2014 WL 7498051, at \*2 (Tex. App. Dec. 31, 2014). Galaz received his right to the unpaid money judgment upon assignment from Vernon subject to the release of liability against Katona.

Galaz maintains that, even if he took subject to release, the claims he is now asserting never belonged to Vernon. Acknowledging that Vernon "might have been precluded from bringing certain claims against Katona due to the release," he argues that he is instead "stepping into Oshita's shoes" and asserting her rights. But Galaz cites no authority for the proposition that this foreclosure judgment allows him to kick off Vernon's shoes and the accompanying liability release. Nor does he point to any precedent that this judgment grants him a distinct legal right. An assignee of a claim may not receive more than the assignor would have been entitled to. *See Fla. Bahamas Lines, Ltd.*, 433 F.2d at 1246. Galaz took Vernon's interest subject to the legal and equitable defenses that existed at the time of the assignment; the transfer does not function to deprive Katona of defenses that she has against Vernon, the original assignor. Galaz's claims are barred by res judicata, compromise and settlement, and accord and satisfaction.

E.

Galaz argues that the bankruptcy court erred in finding his Oshita claims barred by judicial estoppel because (1) Katona did not raise this defense in her pleadings, (2) neither Galaz nor Oshita took inconsistent positions as to Oshita's ownership interest, and (3) Katona took inconsistent positions as to Oshita's ownership interest and her "unclean hands" prohibit judicial estoppel.

For the reasons discussed, we hold that Galaz's Bankruptcy Rule 8006 statement of the issues does not encompass Galaz's argument that the bankruptcy court erred in considering judicial estoppel when Katona did not raise it. We hold that Galaz waived this issue.

This court reviews a determination of judicial estoppel for abuse of discretion. *Love v. Tyson Foods, Inc.*, 677 F.3d 258, 262 (5th Cir. 2012). "The doctrine of judicial estoppel is equitable in nature and can be invoked by a court to prevent a party from asserting a position in a legal proceeding that is inconsistent with a position taken in a previous proceeding." *Id.* at 261. This court looks to the following elements in deciding whether to apply judicial estoppel: "(1) the party against whom judicial estoppel is sought has asserted a legal position which is plainly inconsistent with a prior position; (2) a court accepted the prior position; and (3) the party did not act inadvertently." *Reed v. City of Arlington*, 650 F.3d 571, 574 (5th Cir. 2011) (en banc). These elements, however, are neither inflexible nor exhaustive and "numerous considerations may inform the doctrine's application in specific factual contexts." *Love*, 677 F.3d at 261 (internal quotation marks omitted).

Here, the bankruptcy court took judicial notice of all the filings in the bankruptcy case, the adversary proceedings, the filings and decisions in the appeals of the bankruptcy case, and the decisions in the California state court litigation. Upon review, the bankruptcy court noted several instances where Vernon asserted that Oshita did not have an ownership interest in WSG. Because Galaz is Vernon's successor-in-interest, he inherits the positions that she has taken throughout the litigation. *See Adelphia Recovery Tr. v. Goldman, Sachs & Co.*, 748 F.3d 110, 120 (2d Cir. 2014) (finding appellants judicially estopped by actions of predecessors in interest). He cannot now contend that Oshita has an ownership interest in WSG, because that position is plainly

inconsistent with Vernon's prior position. The bankruptcy court did not abuse its discretion in finding Galaz judicially estopped.

A party cannot rely on judicial estoppel if it comes to the court with unclean hands. *Reg'l Props., Inc. v. Fin. & Real Estate Consulting Co.*, 752 F.2d 178, 183 (5th Cir. 1985). Galaz contends that Katona similarly took inconsistent positions regarding Oshita's ownership interest and thus judicial estoppel cannot apply. The bankruptcy court reviewed these allegedly inconsistent statements made by Katona, but found that Katona had maintained that Oshita's interest was disputed, whereas Vernon had definitively asserted that Oshita had no interest. Because Galaz provides no basis for concluding that the bankruptcy court erred in its factual findings, this court holds that the bankruptcy court did not abuse its discretion in applying judicial estoppel.

F.

As a final argument, Galaz contends that the bankruptcy court erred in denying his motion for summary judgment and requests that this court reverse and render judgment in his favor. Galaz reiterates, as the basis for rendering judgment in his favor, the many arguments that he levied against the bankruptcy court's order granting Katona's motion for summary judgment. For the reasons set forth above, Galaz's arguments fail.

IV.

We AFFIRM the judgment of the district court.