# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

October 6, 2023

Lyle W. Cayce
Clerk

————————

No. 22-20430

————————

In the Matter of Imperial Petroleum Recovery Corporation,

*Debtor*,

Don B. Carmichael; KK & PK Family, L.P.; Barry D. Winston; Gary Emmott,

*Appellants*,

*versus*

Thomas Balke; TEBJES, Incorporated; Ultrawave Technology for Emulsion Control,

*Appellees*.

————————————————————

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:21-CV-2904

————————————————————

Before Ho, Oldham, and Douglas, *Circuit Judges*.

Per Curiam:

This appeal arises from an adversary proceeding in bankruptcy. We affirm in part, vacate in part, and remand.

No. 22-20430

I.

This litigation stems from the bankruptcy of Imperial Petroleum Recovery Corporation ("IPRC"). IPRC once marketed microwave separation technology ("MST") machines, which purported to recover usable oil from various emulsions. The Carmichael parties[1] held security interests in IPRC's assets—including its MST units.

In January 2013, the Carmichaels filed an involuntary Chapter 7 liquidation proceeding against IPRC. In July 2014, the Chapter 7 trustee assigned IPRC's assets to the Carmichaels. In August 2014, the Carmichaels sought physical possession of the assigned assets.

The Carmichaels expected to recover, among other things, two "MST-1000" units. The "MST-1000" was a large, skid-mounted machine. IPRC had previously manufactured and sold at least one of them. And in 2011, Thomas Balke and his company Basic Equipment[2] signed a memorandum of understanding with IPRC to make additional MST units.

But the Carmichaels did not receive two MST-1000s. Instead, the Balke parties sent them a single, partially disassembled, and damaged MST unit and some spare parts. The Carmichaels suspected the Balke parties of bad faith.

In December 2014, the Carmichaels filed this adversary proceeding against the Balkes in the bankruptcy court. They alleged the Balkes had converted IPRC's physical assets and pilfered its intellectual property, all in violation of the automatic stay. *See* 11 U.S.C. § 362(k) (providing that an

---

[1] Unless context indicates otherwise, we refer to the appellants collectively as "the Carmichael parties" or "the Carmichaels."

[2] Unless context indicates otherwise, we refer to the appellees collectively as "the Balke parties" or "the Balkes."

individual injured by willful violation of an automatic stay may seek damages).

In September 2017, after three years of litigation, Bankruptcy Judge Bohm issued an 82-page memorandum opinion delivering a near-complete victory to the Carmichaels. He found that Balke had stolen one MST unit and largely destroyed another. He also determined that Balke had founded a competitor to IPRC, "Ultratec," using technology looted from IPRC, and that Balke lied on the stand. So Judge Bohm awarded the Carmichaels $1.958 million in actual damages and $326,000 in attorneys' fees and other costs and ordered that post-judgment interest accrue on these amounts until paid. And he ordered the Balke parties to turn over to the Carmichael parties the missing (and allegedly converted) IPRC property.

The Balkes filed various post-trial motions and eventually appealed to the district court. While the appeal was pending, Judge Bohm retired, so the case was reassigned to Bankruptcy Judge Isgur. In a post-trial hearing, Judge Isgur commented that the Balke parties raised a "substantial issue" within the meaning of Federal Rule of Bankruptcy Procedure 8008(a). Judge Isgur's remark prompted the district court to remand the case. *See Balke v. Carmichael*, 2020 WL 10897509 (S.D. Tex. Jun. 24, 2020).

In 2021, on remand, Judge Isgur issued a memorandum opinion with new findings. After additional motion practice and still more litigation, he issued a final opinion and an amended judgment. The amended judgment cut the actual damages owed to the Carmichaels to $4,000, cut the fee and cost award to around $92,000, and made no provision for post-judgment interest. All told, the sum due to the Carmichael parties declined roughly 96%, from over $2.3 million to approximately $96,000. The Carmichaels appealed to the district court. The district court affirmed.

The Carmichaels timely appealed to us. We have jurisdiction to hear the Carmichaels' continuing appeal pursuant to 28 U.S.C. § 158(d). The object of our review is not the district court's opinion, but rather the bankruptcy court's judgment. We review the bankruptcy court's conclusions of law *de novo* and its factual findings for clear error. *See In re Pratt*, 524 F.3d 580, 584 (5th Cir. 2008). "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948).

### III.

The Carmichaels raise a host of issues. We deal with them as follows: (A) We explain that the bankruptcy court's factual findings related to the assigned assets were not clearly erroneous. (B) We explain that the district court's damages award nevertheless rested on clearly erroneous factual findings. (C) We explain that the Carmichaels are entitled to post-judgment interest pursuant to 28 U.S.C. § 1961. (D) We dispose of the Carmichaels' contention that the bankruptcy court's judgment did not provide adequate declaratory relief.

### A.

The Carmichaels argue that because Judge Bohm did not make manifest errors of fact, Judge Isgur erred in reaching a different factual conclusion. We disagree.

Judge Bohm found that IPRC possessed two MST units and delivered them to Balke for refurbishment. The Carmichaels later received only one dilapidated MST-1000 unit, partially disassembled by Balke, instead of two renovated ones as expected.

Judge Isgur did not disturb that factual finding. Rather, Judge Isgur found that IPRC delivered two different MST units to Balke. The first was an MST-1000; the second was a less-capable MST-150, which the parties call "the Brazil Unit," and which IPRC cannibalized to maintain its only MST-1000 unit. In reaching this conclusion, he relied on the transcribed testimony of Ryan Boulware, IPRC's only employee during the relevant period. Boulware discussed the Brazil Unit in an examination that occurred in November 2013, earlier in IPRC's bankruptcy proceedings and before the onset of this adversary matter. We do not have a definite and firm conviction that Judge Isgur misread the evidence, including the Boulware transcript.

The Carmichaels also contend that Judge Isgur erred in considering Boulware's testimony at all because it was inadmissible. Judge Isgur admitted the evidence pursuant to the residual exception to the hearsay rule. *See* Fed. R. Evid. 807. Evidence can be admitted under the residual exception if it has adequate "circumstantial guarantees of trustworthiness," and our review is for abuse of discretion. *United States v. Walker*, 410 F.3d 754, 758 (5th Cir. 2005). The Boulware examination was treated as a deposition, and the Carmichaels do not point to anything that might undermine the examination transcript's reliability. On these facts, we cannot say Judge Isgur abused his discretion by admitting the transcript.

## B.

Judge Isgur reduced the Carmichaels' damages award because he found the Carmichaels had already received all that the Balke parties had to give them. On his account, the Carmichaels were entitled only to the cost of reassembly of the single, aging MST unit that Balke dismantled in violation of the automatic stay. The Carmichaels have failed to demonstrate that this premise was clearly erroneous, so we accept it.

But Judge Isgur did clearly err in his calculation of the cost of reassembly. He accepted Balke's estimate that the cost of reassembly was two men working *one* day, and he accordingly awarded a commensurate amount—$4,000. Four years earlier, though, Balke contended the cost of reassembly was actually two men working *two* days. Moreover, the Carmichaels submitted photographic evidence demonstrating that the MST Balke returned to them suffered significant wear during disassembly. And emails from Ryan Boulware, the same individual that the Balkes relied on elsewhere in this proceeding, indicate that assembly of an MST unit might require a "forklift and operator," an electrician, an engineer, a "refrigeration tech" and an "automation tech." So the Carmichaels proffered evidence demonstrating that the cost of reassembly was significantly more than $4,000.

Judge Isgur accepted the Balkes' contention because he found that the Carmichaels' estimates were not supported by a "sufficient factual foundation." But it appears the bankruptcy court's "sufficient factual foundation" standard elevated the burden of proof beyond preponderance. And preponderance is the correct standard for disputes over money in bankruptcy proceedings. *See, e.g.*, *Grogan v. Garner*, 498 U.S. 279, 284–86 (1991); *In re Briscoe Enterprises II*, 994 F.2d 1160, 1165 (5th Cir. 1993); *In re Johnson*, 501 F.3d 1163, 1170–71 (10th Cir. 2007); *In re Steed*, 2023 WL 3719006 (11th Cir. 2023) (per curiam).

Applying a preponderance standard and viewing the record holistically, we are persuaded that the Carmichaels' damages for reassembly exceed $4,000. But we do not attempt to specify the Carmichaels' reassembly damages here. Instead, we remand so that the bankruptcy court may consider the Carmichaels' asserted damages under the correct standard of proof.

No. 22-20430

## C.

The Carmichaels next argue that bankruptcy court's amended judgment should have provided for post-judgment interest, as the original judgment did. The amended judgment made no mention of interest at all. It simply stated that "all other relief is denied." We hold that (1) post-judgment interest applies in bankruptcy adversary proceedings and (2) that interest accrues from the bankruptcy court's original judgment.

### 1.

We have not previously considered the applicability of federal post-judgment interest in bankruptcy adversary proceedings. So we start, as always, with statutory text. The relevant provision is 28 U.S.C. § 1961(a), which says "interest shall be allowed on any money judgment in a *civil case* recovered in a *district court*." (emphasis added). The text prompts two questions: (1) does the term "district court" cover the bankruptcy court for the purposes of § 1961? And (2) does the term "civil case" include bankruptcy adversary proceedings?

First, we hold that § 1961(c)(4) applies to bankruptcy courts. Although the statute says "district court" and specifies that it does not "affect the interest on any judgment of any court not specified in this section," Title 28 makes clear that bankruptcy courts exercise jurisdiction as part of and at the sufferance of supervising district courts. *See* 28 U.S.C. § 151 ("In each judicial district, the bankruptcy judges in regular active service shall constitute *a unit of the district court* to be known as the bankruptcy court for that district." (emphasis added)); *id.* § 1334 ("the district courts shall have original and exclusive jurisdiction of all cases under title 11"); *id.* § 157(a) (permitting a district court to refer Title 11 cases to the bankruptcy court). Since bankruptcy courts operate as arms of district courts, statutes

governing district courts generally apply to bankruptcy courts, and § 1961(c)(4) follows this general rule.

Second, we hold that bankruptcy adversary proceedings are "civil." Federal Rule of Bankruptcy Procedure 7001's description of "adversary proceeding" includes quintessential civil actions—to "recover money or property," to "determine the validity . . . of a lien," to "obtain an injunction," to "obtain a declaratory judgment." Likewise, Title 28 suggests bankruptcy cases are civil, at least sometimes. *See* 28 U.S.C. § 1334(b) ("all *civil* proceedings arising under title 11") (emphasis added); *id.* § 1452 (permitting removal of claims "in a *civil* action") (emphasis added). Title 11 also suggests overlap between bankruptcy and civil actions. *See* 11 U.S.C. § 108(c) (referencing "civil action"); *id.* § 110(j) (same); *id.* § 526(c)(5)(B) (referencing "civil" penalties); *id.* § 707(b) (same). Moreover, in *Grogan*, the Supreme Court treated a Title 11 dispute as a "civil action[]" governed by ordinary civil rules. *Grogan*, 498 U.S. at 286.

So we think the text of 28 U.S.C. § 1961 compels the conclusion that post-judgment interest applies to adversary proceedings in bankruptcy, except in cases where more specific provisions of Title 11 may control. And we are assured by the holdings of our sister circuits. *See In re Riebesell*, 586 F.3d 782, 794 (10th Cir. 2009) ("Because a bankruptcy court is part of the district court, [§ 1961] applies to bankruptcy proceedings." (quoting *In re Pester Refin. Co.*, 964 F.2d 842, 849 (8th Cir. 1992)); *In re Resyn Corp.*, 945 F.2d 1279, 1284 (3d. Cir. 1991) (similar); *see also In re Williams*, 11 F. App'x 344, 347 n.8 (4th Cir. 2001) (per curiam) (noting § 1961 applied in an adversary proceeding); *see also Ocasek v. Manville Corp. Asbestos Disease Comp. Fund*, 956 F.2d 152, 154 (7th Cir. 1992) (noting that § 1961 applies generally in bankruptcy court, but applying Title 11's more specific provision to the case); *In re Celotex Corp.*, 613 F.3d 1318, 1320–23, 1322 n.3 (11th Cir.

2010) (agreeing that 28 U.S.C. § 1961 applies in bankruptcy court, but applying 11 U.S.C. §§ 524 and 1141's more specific provisions).

The Carmichaels are accordingly entitled to post-judgment interest under § 1961.

### 2.

Because the Carmichaels are entitled to post-judgment interest, we must decide when that interest began to accrue. The Supreme Court has held that post-judgment interest ordinarily runs "from the date of the entry of the judgment." *Kaiser Aluminum & Chem. Corp. v. Bonjorno*, 494 U.S. 827, 835 (1990). This case features an original judgment in 2018 and an amended judgment in 2021, but *Kaiser* nevertheless dictates that the Carmichaels are entitled to post-judgment interest from the date of Judge Bohm's original 2018 judgment.

That is for two reasons. First, this case does not feature multiple judgments but rather a single judgment—Judge Bohm's 2018 judgment— *later amended* by Judge Isgur in 2021. Since the amended judgment is a continuation of the original judgment, we view them as a single entity for purposes of post-judgment interest.

Second, the amended judgment did not disturb many of the factual findings supporting the original judgment—including the finding that Balke violated the automatic stay. And as we have explained, we affirm those findings today. So if we awarded interest only from 2021, the Carmichaels would receive no compensation for the portion of Judge Bohm's judgment that survived Judge Isgur's amendment and this appeal. That would contradict the whole point of post-judgment interest—to compensate a successful plaintiff for being deprived of compensation for losses incurred between the ascertainment of damage and payment by the defendant." *Kaiser*, 494 U.S. at 835–36 (alteration and citation omitted).

No. 22-20430

D.

Finally, the Carmichaels contend that the amended judgment fails to provide adequate declaratory relief. The Carmichaels worry primarily about IPRC's intellectual property—property that Balke allegedly and wrongfully expropriated. That concern is understandable because the record features testimony from a patent lawyer hired by Balke for the purposes of copying IPRC's innovations.

But the bankruptcy court's amended judgment addresses the issue. It provides that the Carmichaels "own all property transferred to them by the Trustee's execution of the 2014 Assignment Agreement." The bankruptcy court was referring to IPRC's trustee's July 2014 assignment to the Carmichaels, which included all the Debtor's "documents," "general intangibles," "patents," "patent applications," "trademarks," "software, writings, plans, specifications and schematics," and "all recorded data of any kind or nature." So to the extent IPRC had assignable intellectual property, it was assigned to the Carmichaels in 2014, and the bankruptcy court's judgment respects that assignment. The Carmichaels do not explain what else they wanted the bankruptcy court to do.

IV.

The Balkes raise two issues of their own on appeal. We (A) reject the Balkes' estoppel argument and (B) decline the Balkes' suggestion that we sanction the Carmichaels.

A.

The Balkes argue that the Carmichaels, as successors to IPRC's property interests, are estopped from claiming that IPRC's property was worth more than the value IPRC assigned to it in the bankruptcy petition. They rely primarily on *In re Galaz*, 841 F.3d 316 (5th Cir. 2016), where we

affirmed a lower court's discretionary choice to apply judicial estoppel. *Id.* at 326. The estopped party had taken over the litigation interest of another who had asserted something plainly inconsistent with the position the estopped party wished to assert. *Ibid.*

But we have never held that estoppel is an inexorable command. And the Supreme Court has explained that the propriety of applying estoppel is dictated by the "specific factual context[]." *New Hampshire v. Maine*, 532 U.S. 742, 751 (2001). That is because judicial estoppel exists to "protect the integrity of the judicial process" from the misbehavior of litigants. *Id.* at 749 (quotation omitted). Misbehavior, though, is not always predictable, so the "circumstances under which judicial estoppel may appropriately be invoked are probably not reducible to any general formulation of principle." *Id.* at 750 (quotation omitted).

In this factual context, estoppel is inappropriate. The Carmichaels were under-secured creditors of IPRC. Their claims summed to around $4 million, so they were under-secured no matter whether IPRC's property was worth $2 million or nothing at all. The Carmichaels accordingly had no reason to litigate the value of IPRC's property during the primary bankruptcy proceeding—they were going to get it all regardless. Moreover, if we applied estoppel here, every future secured creditor would be forced to litigate the precise value of every asset on every debtor's asset schedule. Failure to do so would leave those future secured creditors with no ability to recover full value should a third party (like Balke, here) violate the automatic stay. That makes no sense, and we therefore reject it.

Of course, nothing disables the bankruptcy court from considering the value IPRC placed on its property. But the Balkes are wrong to claim that the Carmichaels, our court, or the bankruptcy court are bound by IPRC's valuations.

B.

The Balkes also suggest in their brief that we sanction the Carmichaels for filing a frivolous appeal. See Fed. R. App. P. 38. But the Balkes have not moved for sanctions, and we decline to construe their counseled brief as a relevant motion.

Even if the Balkes had properly moved for sanctions, we would deny the motion. Far from frivolous, the Carmichaels' appeal has some merit. The Carmichaels can hardly be faulted for attempting to rehabilitate Judge Bohm's award. And the Balkes, who violated the automatic stay, have far-from-clean hands.

\*       \*       \*

The district court remarked that "This suit has, in course of time, become so complicated that no man alive knows what it means . . . Still it drags its dreary length before the court, perennially hopeless." *Carmichael v. Balke*, 2022 WL 2806456, \*1 n.1 (S.D. Tex. Jul. 18, 2022) (quoting Charles Dickens, *Bleak House*, in 1 Works of Charles Dickens 4–5 (1891)) (quotation omitted). But even when fatigued, we must tirelessly discharge "the duty of the court to carry out the intention of the legislature." *Wash. Univ. v. Rouse*, 75 U.S. 439, 440 (1869). Accordingly, this case must "go on till [we] come to the end." Lewis Carroll, Alice in Wonderland 94 (Donald J. Gray ed., W.W. Norton 1992).

We remand so that the bankruptcy court may reconsider its damages award. It may also, in its discretion, reconsider its attorneys' fees award. On remand, the bankruptcy court should apply post-judgment interest to any damages award as provided by 28 U.S.C. § 1961, dating from the entry of Judge Bohm's judgment in 2018. We affirm the bankruptcy court's judgment in all other respects.

No. 22-20430

AFFIRMED    IN    PART;    VACATED    IN    PART; REMANDED.