# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

June 12, 2026

Lyle W. Cayce
Clerk

———————

No. 24-30775

———————

Mark Wightman, *Doctor of Dental Surgery*; Courtney Wightman, *Doctor of Dental Surgery*; Wightman Family Dental, L.L.C.,

*Plaintiffs—Appellants*,

*versus*

Ameritas Life Insurance Corporation,

*Defendant—Appellee*.

———————————————————————

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:19-CV-11628

———————————————————————

Before Elrod, *Chief Judge*, and Higginbotham and Graves, *Circuit Judges*.

James E. Graves, Jr., *Circuit Judge*:

Mark and Courtney Wightman own a small clinic called Wightman Family Dental. They made a deal with DenteMax to discount their services to its subscribers in exchange for access to new patients. But unbeknownst to the Wightmans, DenteMax also made a deal with Ameritas to allow it to pay DenteMax's network providers, like the Wightmans, at the same discounted rates. They discovered this after Ameritas refused to reimburse them at their

No. 24-30775

standard rates. So, the Wightmans sued DenteMax and Ameritas, alleging violations of Louisiana's PPO Act, unjust enrichment, and more. The district court granted summary judgment to Ameritas, concluding that the Wightmans abandoned their non-PPO Act claims in a previous appeal and that they cannot sue under the PPO Act because dental services are not covered by its definition of healthcare. The Wightmans appeal.

## I. Background

## A. Factual History

The Wightmans contracted with DenteMax, a Preferred Provider Organization ("PPO") that owns a Preferred Provider Network. This agreement allowed DenteMax to offer the Wightmans' services at discounted rates to its network subscribers and in return gave the Wightmans access to a larger client pool. *Wightman v. Ameritas Life Ins. Corp.*, No. 21-30148, 2023 WL 2940241, at *1 (5th Cir. Apr. 13, 2023).

In 2012, Ameritas Life Insurance Corp. and DenteMax entered into a separate agreement which allowed Ameritas to access DenteMax's network and reimburse providers, like the Wightmans, at discounted rates. *See id.* Thus, Ameritas was able to offer its customers DenteMax's rates for the Wightmans' services.

But the Wightmans did not know about this agreement. When patients paid for services using Ameritas' benefit cards, the Wightmans believed they would be reimbursed at their standard rates. *Id.* The cards made no mention of a discount. *Id.* However, the Wightmans were reimbursed at a discounted rate and contacted Ameritas, which informed them of the agreement between it and DenteMax. *Id.*

2

No. 24-30775

## B. Procedural History

The Wightmans sued Ameritas and DenteMax, alleging breach of contract and violations of Louisiana's PPO Act. *Id.* The district court partially dismissed the Wightmans' claims, but they filed two amended complaints and transformed the case into a putative class-action suit. *Id.* The district court again dismissed the Wightmans' claims for statutory violations and unjust enrichment, concluding that Louisiana law prescribed the suit and that "but for prescription, they would have had a" claim under the Louisiana statute. *Id.* at *2. On appeal, this court certified the question "Are claims arising under the Louisiana's Preferred Provider Organization Act, La. R.S. 40:2203.1, delictual or contractual for prescriptive purposes" to the Louisiana Supreme Court. *Id.* The Louisiana Supreme Court concluded that they were contractual and so the Wightmans' claims were not prescribed. *Id.* So we reversed the district court's dismissal of Ameritas. *Id.* Meanwhile, DenteMax settled with the Wightmans.

On remand, the district court granted Ameritas summary judgment. Specifically, it concluded that dental services are not considered healthcare services under the PPO Act, so the Wightmans' claims under the statute failed. It also concluded that the Wightmans had abandoned their non-PPO Act claims on the first appeal. Finally, it denied the Wightmans' request to amend their complaint and denied a motion for reconsideration.

## II. The PPO Act Claims

We turn first to the district court's grant of summary judgment in favor of Ameritas on the PPO Act claims.

## A. Standard of Review

We review grants of summary judgment de novo. *Kerns v. First State Bank of Ben Wheeler (In re Kerns)*, 130 F.4th 455, 459 (5th Cir. 2025). "The

court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). We draw all inferences in favor of the non-moving party and view the record in the light most favorable to it. *Hillman v. Loga*, 697 F.3d 299, 302 (5th Cir. 2012). Issues of law, such as statutory interpretation, are appropriately dealt with at summary judgment. *See Maxim Crane Works, L.P. v. Zurich Am. Ins. Co.*, 11 F.4th 345, 350 (5th Cir. 2021).

## B. Statutory Framework

The district court granted Ameritas summary judgment on the Wightmans' PPO Act claims because it concluded that dental services are not healthcare under Louisiana law. We disagree.

Louisiana's PPO Act states that "[a]ny group purchaser may contract with any provider . . . to form a preferred provider organization." La. Stat. Ann. § 40:2203(A). A provider is an entity that offers "health care services and shall include but not be limited to hospitals, individuals, or groups of physicians, individuals or groups of psychologists, nurse midwives, ambulance service companies, and other health care entities." *Id.* § 40:2202(6). "Any health care entity which is specifically covered by a group purchaser's insurance policy . . . shall be construed to be a 'provider'" under this Act. *Id.*

A PPO often allows a group purchaser to reimburse providers at discounted rates, but it may not do so "unless such organization is clearly identified on the benefit card issued by the group purchaser or other entity accessing a group purchaser's contractual agreement . . . and presented to the participating provider when medical care is provided." *Id.* § 40:2203.1(B). A group purchaser is liable to the provider for failure to comply with this section. *Id.* § 40:2203.1(G).

No. 24-30775

The Wightmans assert that since the benefit cards issued by Ameritas did not comply with the PPO Act, there is little dispute that Ameritas is liable if the Act applies. Thus, whether Ameritas is liable to the Wightmans under the PPO Act turns, in part, on the threshold question of whether dental services qualify as healthcare under the Act.

### C. Rules of Statutory Interpretation

To answer that question, we must interpret the statute. "When applying state law, we interpret the state statute the way we believe the state Supreme Court would, based on prior precedent, legislation, and relevant commentary." *Vielma v. Eureka Co.*, 218 F.3d 458, 462 (5th Cir. 2000) (citation modified). Thus, "we use the same methods of statutory interpretation used by the" Louisiana Supreme Court. *Camacho v. Ford Motor Co.*, 993 F.3d 308, 311 (5th Cir. 2021).

Under Louisiana's "civilian methodology," its "Constitution, codes, and statutes are of paramount importance." *Jorge-Chavelas v. La. Farm Bureau Cas. Ins. Co.*, 917 F.3d 847, 851 (5th Cir. 2019) (citation modified). As elsewhere, "the interpretation of any statutory provision starts with the language of the statute itself." *Guerrera v. United Fin. Cas. Co.*, 161 F.4th 913, 916 (5th Cir. 2025) (citation modified) (quoting *Caldwell Par. Sch. Bd. v. La. Mach. Co.*, 2012-1383 (La. 1/29/13), 110 So. 3d 993, 996). "When a law is clear and unambiguous, and its application does not lead to absurd consequences, it shall be applied as written, with no further interpretation made in search of the legislative intent." *84 Lumber Co. v. Cont'l Cas. Co.*, 914 F.3d 329, 334 (5th Cir. 2019) (citation modified). But "if the language of the law is susceptible [to] different meanings, it must be interpreted as having the meaning that best conforms to the purpose of the law." *Seguin v. Remington Arms Co.*, 31 F.4th 311, 316 (5th Cir. 2022) (citation modified). Courts must consider "the entire statute and all other statutes on the same

subject matter, and a construction should be placed on the provision in question which is consistent with the express terms of the statute and with the obvious intent of the Legislature in its enactment of the statute." *ABL Mgmt., Inc. v. Bd. of Sup'rs of S. Univ.*, 2000-0798 (La. 11/28/00), 773 So. 2d 131, 135.

### D. Definition of Healthcare Under the PPO Act

The district court initially determined that dental services are healthcare under the PPO Act, but subsequently reversed course largely based on the passage of the Network Leasing Act ("NLA"). It reasoned that, because the NLA governed "fair and transparent dental network contracting," the same general subject governed by the PPO Act, it can be "presume[d] that dental providers lacked protection" offered by the PPO Act.

We conclude that dental services are healthcare under the PPO Act for two reasons. First, the Act's broad language and healthcare's historical usage suggest that dentists are covered under the Act. Second, the NLA governs different conduct than the PPO Act and so this reading would not render the two provisions redundant.[1]

Under the terms of the PPO Act, healthcare providers are entities that offer healthcare services and "shall include but not be limited to hospitals, individuals, or groups of physicians, individuals or groups of psychologists, nurse midwives, ambulance service companies, and other health care entities." LA. STAT. ANN. § 40:2202(6). When considering

---

[1] The Louisiana Department of Insurance ("LDI") and Louisiana Dental Association filed amicus briefs in support of the Wightmans. Both amici stress the broad language of the PPO Act, but the LDI also stresses that the PPO Act and NLA do not overlap because the NLA applies at the time of contracting and the PPO Act applies at the point of care.

whether dentists are included within this definition, we must remember that general terms in a statute are given their general meaning. Antonin Scalia & Bryan Garner, Reading Law 101 (2012). Healthcare is "the services provided, usu[ally] by medical professionals, to maintain and restore health." *Healthcare*, Black's Law Dictionary (12th ed. 2024). So, if a dentist is a medical professional, they likely are healthcare providers. And medicine is broadly defined as "[t]he scientific study and practice of preserving health and treating disease or injury." *Medicine*, Black's Law Dictionary (12th ed. 2024).

A dentist is "one who is skilled in and licensed to practice the prevention, diagnosis, and treatment of diseases, injuries, and malformations of the teeth, jaws, and mouth." *Dentist*, Webster's Ninth New Collegiate Dictionary (1990). This fits squarely within the ordinary meaning of healthcare services discussed above. As the Wightmans point out, dentists "diagnos[e] and treat[] diseases that affect the gums and teeth," "perform[] surgical procedures," and "conduct[] visual examinations, diagnostic tests, and x-rays." Ameritas responds by arguing that the PPO Act should be narrowly construed and that the absence of terms like "dentist" and "dental" are dispositive. But we cannot ignore the general meanings that fit within the general terms of the statute. And because the provision is open-ended and does not contain any exceptions, it seems unlikely that the legislature intended to exclude dentists from such a broad definition.

An opinion from the Louisiana Attorney General agrees. In 1994, the Attorney General explicitly stated "that dentists are covered by the definition of 'provider'" under La. Stat. Ann. § 40:2202(6).[2] La. Att'y

---

[2] Ameritas notes that the Attorney General opinion was adopted five years before the enactment of La. Stat. Ann. § 40:2203.1 and argues that it is therefore outdated.

No. 24-30775

Gen. Op. No. 94-315 (Sept. 22, 1994), 1994 WL 553063, at *2. The Wightmans also compile numerous examples of how dentists are governed like ordinary medical doctors under Louisiana's broader statutory framework. This evidence, coupled with the ordinary definition of the terms in the statute, demonstrates that dentists are covered by the PPO Act.

The subsequent adoption of the NLA does not convince us otherwise. The NLA allows a "contracting entity [to] grant a third party access to a provider network contract or a provider's dental services or contractual discounts pursuant to a provider network contract" provided certain requirements are met, including that the contract explicitly states that the contracting entity may do this. LA. STAT. ANN. § 22:1172(A), (A)(1). While the PPO Act contains a private right of action, the NLA is enforced only by the Louisiana Commissioner of Insurance. *Id.* § 22:1172(E).

The Wightmans assert that the NLA and PPO Act can be harmonized because the PPO Act governs actions at the point of care (by mandating that certain information appear on benefit cards presented to providers). But, they say, the NLA only governs contract formation. Ameritas contends that the NLA *does* apply to post-contract activity (such as providing notice when a new third party has been granted access to a network) and that, since it covers the same type of conduct covered under the PPO Act but for dentists, it is proof that the PPO Act never applied to dentists in the first place.

We agree with the Wightmans. "[A]ll statutes on the same subject matter should be read together and interpreted as a whole to effect the

---

But this overlooks the fact "that a word used in different parts of the statute should be construed to have the identical meaning throughout the entire statute." *United States v. Est. of Parsons*, 367 F.3d 409, 416–17 (5th Cir. 2004) (citation modified).

legislative intent and should be construed in such a way as to reconcile, if possible, apparent inconsistencies or ambiguities so that each part is given effect." *Anthony Crane Rental, L.P. v. Fruge*, 2003-0115 (La. 10/21/03), 859 So. 2d 631, 634. While the NLA and PPO Act cover slightly different interactions, they both fundamentally govern the ability of insurance companies to contract with third parties to offer discounts on providers' services. And since Louisiana law has generally treated dentists as healthcare providers, we, as the Wightmans suggest, read the statutes *in pari materia*. Thus, while the NLA imposes certain contracting requirements on entities like DenteMax, the PPO Act governs what information must be produced on benefit cards presented at the point of care. These statutes may have similar goals, but they cover different conduct, so the adoption of the NLA does not necessarily demonstrate that dentists were not covered under the PPO Act.

Accordingly, we conclude that dental services are healthcare under the PPO Act, so the district court erred by granting Ameritas summary judgment on that ground.

### E. Remaining Summary Judgment Issues

### 1. Alternative Grounds for Affirming

The parties make other arguments regarding whether we may affirm summary judgment of the Wightmans' PPO Act claims on other grounds. However, the district court based its ruling on whether the Wightmans were providers under the Act and largely avoided addressing other issues. "As a well-established general rule, this court will not reach the merits of an issue not considered by the district court." *PHH Mortg. Corp. v. Old Republic Nat'l Title Ins. Co.*, 80 F.4th 555, 563 (5th Cir. 2023) (citation modified). So, "we follow that well-traveled path and remand for consideration in the first

instance."[3] *Students for Fair Admissions, Inc. v. Univ. of Tex. at Aus.*, 142 F.4th 819, 828 (5th Cir. 2025).

## 2. Judicial Estoppel

The district court did, however, conclude that the Wightmans were judicially estopped from arguing that the contract between DenteMax and Ameritas established a PPO, but it did so without articulating a legal standard and cited only one case.

"We review a district court's judicial estoppel determination for abuse of discretion." *In re Superior Crewboats, Inc.*, 374 F.3d 330, 334 (5th Cir. 2004). "A court abuses its discretion when it (i) fails to identify and apply the correct legal standards; or (ii) fails to provide sufficient reasons for its decision to enable appellate review." *United States v. Ahsani*, 76 F.4th 441, 447 (5th Cir. 2023).

"The doctrine of judicial estoppel is equitable in nature and can be invoked by a court to prevent a party from asserting a position in a legal proceeding that is inconsistent with a position taken in a previous proceeding." *Galaz v. Katona (In re Galaz)*, 841 F.3d 316, 326 (5th Cir. 2016) (citation omitted). Courts must consider whether: "(1) the party against whom judicial estoppel is sought has asserted a legal position which is plainly inconsistent with a prior position; (2) a court accepted the prior position; and (3) the party did not act inadvertently." *Reed v. City of Arlington*, 650 F.3d 571, 574 (5th Cir. 2011) (en banc) (citation modified). But the elements "are neither inflexible nor exhaustive and numerous considerations may inform

---

[3] We note that after oral argument, the parties submitted supplemental letters addressing some of these arguments. But we express no view on them.

the doctrine's application in specific factual contexts." *Galaz*, 841 F.3d at 326.

The district court abused its discretion by applying judicial estoppel without providing sufficient analysis. It failed to articulate the governing standard, though it seemed to conclude the positions taken by the Wightmans are inconsistent. But it also made no finding on either the second or third elements and offered only vague reasoning. And "discretionary choices are not left to a court's inclination, but to its judgment; and its judgment is to be guided by sound legal principles." *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 416 (1975) (citation modified). Even if a court may exercise its discretion equitably, like here, that "hardly means that it is unfettered by meaningful standards or shielded from thorough appellate review." *Id.*

Whether to apply judicial estoppel "is dictated by the specific factual context." *Carmichael v. Balke (In re Imperial Petroleum Recovery Corp.)*, 84 F.4th 264, 273 (5th Cir. 2023) (citation modified). Since there is no "demonstration of what facts and law the district court considered when exercising its discretion, we are unable to conduct a fair and full appellate review of the district court's exercise of its discretion." *Occidental Petroleum Corp. v. Wells Fargo Bank, N.A.*, 117 F.4th 628, 646–47 (5th Cir. 2024) (Ramirez, J., concurring in part and dissenting in part) (citation modified).

We take no view on whether it would be appropriate to apply judicial estoppel in this case. We only conclude that the district court failed to adequately explain its reasoning. So, we remand for a more comprehensive analysis.

### III. The Non-PPO Act Claims

The district court next declined to consider any of the Wightmans' non-PPO Act claims, including their claim for unjust enrichment, because "in their briefing on appeal, [the Wightmans] only offered passing mention

to other claims," so it concluded they were abandoned. The Wightmans argue "[t]hat conclusion disregarded the Fifth Circuit's mandate, the procedural posture on remand, and intervening legal developments requiring renewed factual and legal determinations."

The district court's refusal to consider the Wightmans' non-PPO Act claims is problematic for two reasons.

First, *this* court, not the district court, has the authority to determine whether to consider issues that may have been forfeited on appeal. After all, while "we may in our discretion decline to consider issues not raised in an initial brief," we may also choose to address them. *Est. of Lisle v. Comm'r*, 341 F.3d 364, 384 (5th Cir. 2003). Though the district court may properly decide which issues have been forfeited *in the district court*, it is inappropriate for it to decide the same for us.

Second, the district court violated the mandate rule, which "requires a district court on remand to effect our mandate and to do nothing else." *Deutsche Bank Nat'l Tr. Co. v. Burke*, 902 F.3d 548, 551 (5th Cir. 2018) (per curiam) (citation modified). While Ameritas certainly argued before this court that the Wightmans abandoned their unjust enrichment claim, the Wightmans disputed this. But the panel refused to take a position and simply reversed "the district court's grant of partial summary judgment and dismissal of Ameritas." *Wightman*, 2023 WL 2940241, at *2. It "recognize[d] that the parties [made] additional arguments" but because "prescription is the dispositive issue for purposes of this summary judgment[, it] decline[d] to address any additional issues . . . and [made] no determination as to whether they are properly before this court." *Id.* at *2 n.3. Since the panel simply reversed the district court's order and refused to decide any other issues, the district court erred by concluding that the Wightmans had abandoned these claims on appeal. Instead, the district court

should have reconsidered each of the Wightmans claims in light of our court's decision.

A district court may not decide whether issues are forfeited by the parties in the court of appeals. So, we reverse the district court's grant of summary judgment on the non-PPO Act claims and remand for consideration.

## IV. Leave to Amend

Finally, the Wightmans appeal the district court's denial of their motion to seek leave to amend their complaint. We review for abuse of discretion. *Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 863 (5th Cir. 2003). Given the late stage of the litigation and the lengthy procedural history, we cannot say the district court abused its discretion.

## V. Conclusion

For the foregoing reasons, the district court is REVERSED in part and AFFIRMED in part, and the case is REMANDED for further consideration consistent with this opinion.